# CHARLESTON.

United Fuel Gas Company v. Public Service Commission.

Submitted December 16, 1913.     Decided January 28, 1914.

1. Corporations—*Order of Public Service Commission—Review—Extent of Jurisdiction.*

   This court by section 16, chapter 9, Acts 1913, is given jurisdiction not by appeal, but as upon original process to review an order of the Public Service Commission created by said act, and such jurisdiction is limited to matters purely judicial and does not extend to matters purely administrative, executive or legislative, such jurisdiction not being conferred by the Constitution.     (p. 576).

2. Same—*Constitutional Law—Due Process—Orders of Public Service Commission—Review.*

   This statute so construed is not void as depriving a public service corporation, without due process of law, of rights guaranteed to it by the state or federal Constitution.  The process of such Public Service Commission provided in said act, with right thereby given to have a review of the order or judgment of said Commission by this court, as to matters judicial involved therein, and as provided thereby, satisfying the requirement of due process and other constitutional rights protected by the Constitution.     (p. 576).

3. Same—*Orders of Public Service Commission—Conclusiveness on Review.*

   Sections 5, 6 and 7 of said act, adapted to all kinds of public service corporations, are in substance sections 12, 2 and 3, of the Interstate Commerce Act, and as interpreted by the Supreme Court of the United States, with respect to orders and judgments of the Interstate Commerce Commission, the orders of the Public Service Commission are final and not subject to judicial interference on review by this court, unless "(1) beyond the power which it could constitutionally exercise; or (2) beyond its statutory power; or (3) based upon a mistake of law."     (p. 582).

4. Same—*Public Service Commission—Police Power.*

   The powers so conferred upon the Public Service Commission are within constitutional limitations, as an exercise by the State of its police power.     (p. 584).

5. Gas Companies—*Contracts with Consumers.*

   Contracts of a natural gas company with consumers of natural gas for exclusive service for a term of years in consideration of reduced rates, constitute no lawful basis for discrimination in rates in favor of such contract consumers against other consumers when in other respects the service is rendered all under substantially the same cir-

cumstances and conditions; and when the manifest object of such contracts is to monopolize the business of serving the public with natural gas.   (p. 585).

6.   CORPORATIONS—*Order of Public Service Commission—Review.*
The judgment or order of the Public Service Commission in such cases on questions of expediency, and as to what is best for the public interests, is final and not reviewable by this court.   (p. 585).

(POFFENBARGER, JUDGE, concurring.)

Petition by the United Fuel Gas Company against the Public Service Commission.

*Order of Suspension Refused.*

*Vinson & Thompson, McCorkle & Chilton, R. G. Altizer* and *Geo. M. Hoffheimer,* for petitioner.

*John B. Daish, Fred M. Livezey,* and *Frank Lively,* Assistant Attorney General , for respondent.

MILLER, PRESIDENT:

Upon the petition of the United Fuel Gas Company, pursuant to section 16 thereof, we are called upon for the first time to give construction to chapter 9, Acts of the Legislature of 1913, entitled "An Act to create a public service commission and to prescribe its powers and duties, and to prescribe penalties for the violation of the provisions of this act", in so for at least as the provisions thereof are applicable to the case now presented, and undertake to impose or confer jurisdiction on this court, original or appellate, in relation thereto.

Said section 16 provides: "Any party feeling aggrieved by the entry of a final order by the commission, affecting him or it, may present his or its petition in writing to the supreme court of appeals, or to a judge thereof in vacation, within thirty days after the entry of such order, praying for the suspension of such final order.   The applicant shall deliver a copy of such petition to the secretary of the commission before presenting the same to the court, or the judge.   The court or judge shall fix a time for the hearing on the application, but such hearing shall not be held sooner than five days, unless by agreement of the parties, after its presentation, and notice of the time and place of such hearing shall be forthwith

delivered to the secretary of the commission, so that the commission may be represented at such hearing by one or more of its members or by counsel. If the court or the judge after such hearing be of the opinion that a suspending order should issue, the court or the judge may require bond, upon such conditions and in such penalty, and impose such terms and conditions upon the petitioner as are just and reasonable. The hearing of the matter shall take precedence over all other matters before the court except the correction of assessments. For such hearing the commission shall file with the clerk of said court all papers, documents, evidence and records or certified copies thereof as were before the commission at the hearing or investigation resulting in the entry of the order from which the petitioner appeals. The commission shall file with the court before the day fixed for the final hearing a written statement of its reasons for the entry of such order, and after arguments by counsel the court shall decide the matter in controversy as may seem to be just and right.''

The petitioner complains of an order of the Commission pronounced against it on November 15, 1913, on three several complaints or petitions pending before it, and by agreement heard together, one of R. D. Wylie, one of Floyd S. Chapman, and the other of the City of Huntington. The order of the Commission sufficiently discloses the grounds of complaint, substantially the same in all three petitions, so far as concerns our present inquiry, and the action of the Commission thereon as follows: ''Upon consideration whereof the Public Service Commission is of the opinion

''First: That the United Fuel Gas Company is violating the law by maintaining in the City of Huntington two rates for natural gas for domestic purposes, one being a rate of 23 cents per 1000 cu. ft. less a discount of 2 cents per 1000 cu. ft. if paid on or before the 10th day of the month following that in which the gas is consumed, and another rate of 22 cents per 1000 cu. ft. less a discount of 2 cents per 1000 cu. ft. if paid on or before the 10th day of the month following that in which the gas is consumed, said latter rate being given to those consumers who have entered into a written agreement with the United Fuel Gas Company for a period of five years, and it is

therefore ordered by the Public Service Commission that the United Fuel Gas Company do cease and desist from a continuation of this practice in discriminating between the two classes of domestic consumers. Second: The Public Service Commission does not at this time pass on the question of reasonableness of the rates now charged by the United Fuel Gas Company except the Commission is of the opinion that the rate of 23 cents per 1000 cu. ft. less a discount of 2 cents per 1000 cu. ft. if paid on or before the 10th day of the month following that in which the gas is consumed, now charged to 'No contract consumers' is excessive and exorbitant and the United Fuel Gas Company is ordered to reduce their rates so that the maximum rate allowed this Company to charge any of its consumers will not exceed 22 cents per 1000 cu. ft. less a discount of 2 cents per 1000 cu. ft. if paid on or before the 10th day of the month following that in which the gas is consumed.''

In its answer to the several complaints petitioner attempted to justify its alleged unlawful and unjust discrimination, on grounds justified by the statute, and its contracts with its customers, and a compromise decree in a suit brought against it by the City of Huntington.

In its written opinion or statement giving its reasons for the entry of the order complained of, filed with the papers in this court, as required by said section 16, it is said that "the Commission does not pass on the validity of the contracts at the time they were entered into if they were entered into prior to the time the Public Service Commission Law became effective'', and it goes without saying that nothing was determined against the petitioner not covered by the terms of the order of which the petitioner complains.

In the petition presented here, grounded on the same facts alleged in its answers to the original complaints, it is charged that the order complained of was unwarranted and erroneous in the following particulars: ''First: In finding that the charging of said two rates under the different circumstances and conditions above set forth, was unlawful and in ordering that your petitioner cease and desist so to do. Second: In finding that the rate charged by your petitioner for natural

gas sold by it in said City of Huntington, for domestic pur-
poses, of twenty-three cents per thousand cubic feet, with a
discount of two cents per thousand for prompt payment of
bills, was an excessive and exorbitant rate, and in ordering
your petitioner to reduce the same to a less rate or charge.
Third: In directing your petitioner to discriminate between
its two said classes of patrons by furnishing gas to one of
said classes upon no condition whatsoever at the same rate as
that charged to the other of said classes on the express condi-
tion that the patrons of the latter class agree to purchase all
gas used by them, for certain purposes, during a definite period
of time. Fourth: In that said order of said Commission is
unconstitutional and void. Fifth: In that said order of said
Commission deprives your petitioner of property without due
process of law and the judgment of its peers, in violation of
section 10 of Article 3 of the Constitution of West Virginia,
and is unconstitutional and void. Sixth: In that, by said
order of said Commission, private property of your petitioner
is taken or damaged for public use, without just compensa-
tion in violation of Section 9 of Article 3 of the Constitution
of West Virginia, and said order is unconstitutional and void.
Seventh: In that said order of said Commission deprives
your petitioner of property without due process of law, in
violation of the 14th amendment of the Constitution of the
United States, and is unconstitutional and void. Eighth:
In that said order of said Commission denies to the said
petitioner, a person within the jurisdiction of the State of
West Virginia, the equal protection of the laws, in violation
of the 14th amendment of the Constitution of the United
States, and is unconstitutional and void. Ninth: In that said
order of said Commission abridges the privileges and immuni-
ties of the said petitioner, a citizen of the United States, in
violation of the 14th amendment of the Constitution of the
United States, and is unconstitutional and void. Tenth: In
that, by said order of said Commission, private property of
said petitioner is taken for public use, without just compen-
sation, in violation of the 5th amendment of the Constitution
of the United States, and said order is unconstitutional and
void. Eleventh: In that said order of said Commission

impairs the obligation of the contracts between said peti-
tioner and said consumers who have entered into said agree-
ment with said petitioner, in violation of section 1 of Article
10 of the Constitution of the United States, and said order is
unconstitutional and void.''

Before proceeding to a consideration of the case presented
we are met at the very threshold with the question which
we raised at the bar, and on which we have been greatly aided
by the able and elaborate briefs of learned counsel, supplied
and filed since the oral arguments were concluded, namely:
What jurisdiction have we under the Constitution and laws
of this State, including the Act of 1913, to modify, set aside or
annul the order of the Commission complained of?

With reference to the particular language of section 16 of
said act, it is insisted by counsel for petitioner that jurisdic-
tion by appeal is conferred in plain terms, to review that
order, upon all the evidence and papers before the Commis-
sion, and after argument, using the language of the statute,
to ''decide the matter in controversy as may seem to be just
and right'', even to the extent of substituting our judgment
for that of the Commission, and that this purpose of the
legislature is further manifested in the language of section
5 of the act, providing that the orders of the Commission shall
continue in force until the expiration of the time, if any,
named in the order, ''or until revoked or modified by the com-
mission, unless the same be suspended, modified or revoked by
order or decree of a court of competent jurisdiction.''

This section we think manifests a knowledge on the part of
the legislature that other courts, courts of original jurisdic-
tion, ''having competent jurisdiction'' might be called upon
to deal with orders of the Commission, and with power on
legal or equitable grounds to ''suspend, modify or revoke''
the same, for that jurisdiction, if it could be, is not attempted
to be limited to this court.

Apart from this Public Service Commission Act, we think
it must be conceded, as several times decided, that the appel-
late jurisdiction of this court is limited by the Constitution
and statutes to judicial matters, in judicial proceedings, and
that we have no power to review by writ of error or appeal

the decisions of an inferior tribunal, officer or board, as to matters which are merely administrative, executive or legislative, and not strictly judicial in nature, except when such power may be expressly conferred by the Constitution. *Railway Co.* v. *Board of Public Works*, 28 W. Va. 264; *Mackin* v. *Taylor County Court*, 38 W. Va. 338; *Alderson* v. *Commissioners*, 31 W. Va. 640; *Wheeling B. & T. Ry. Co.* v. *Paull*, 39 W. Va. 142; *In re Town of Union Mines*, 39 W. Va. 179, 181; *Charleston & Southside Bridge Co.* v. *Kanawha County Court*, 41 W. Va. 663; *State* v. *South Penn Oil Co.*, 42 W. Va. 94; *Summers County* v. *Monroe County*, 43 W. Va. 210; *Ritchie County Bank* v. *County Court*, 65 W. Va. 208.

It is insisted, however, by counsel, that these decisions are not opposed to their views, because in those cases appellate jurisdiction was attempted to be supported by general statutes, not by statute specifically conferring it, and that the question is still an open one, when appellate jurisdiction is specifically conferred, as it is claimed is the fact here. We do not think the question can be said to be an open one, for if it can properly be said that the legislature has attempted to confer such jurisdiction would not the want of power in it to do so, in matters not strictly judicial, and not expressly authorized by the Constitution, render its act abortive? We think the decisions cited so affirm. We are cited by counsel to no case supporting their contentions. The provision of section 1, article 5, of the Constitution, requiring that the Legislative, Executive and Judicial Departments shall be separate and distinct, etc., and section 1, article 8, saying in what courts the judicial power of the State shall be vested, and of section 3 of the same article, prescribing and defining the original and appellate jurisdiction of this court, give no support to the theory of appellate jurisdiction in this court, or of the power of the legislature to invest or impose such jurisdiction to review by appellate process other than strictly judicial proceedings, nor can we find justification for such appellate jurisdiction in section 19, of said article, authorizing the creation of courts of limited jurisdiction and providing for appeals therefrom.

But warrant for appellate jurisdiction is sought in those

provisions of section 3, of said article 8, giving the court appellate jurisdiction, (1) in controversies concerning the right to levy tolls and taxes, and in cases involving freedom or the constitutionality of a law; and (2) "such other appellate jurisdiction, in both civil and criminal cases, as may be prescribed by law." But will a proper construction of these constitutional limitations justify the conclusion that if these questions should be involved in some legislative, executive or administrative proceeding of the government, an appeal would lie directly to this court, even if some statute undertook to confer such jurisdiction? We think not. By the plain terms of the Constitution appellate jurisdiction is limited to controversies arising in judicial proceedings, and the "other appellate jurisdiction" that may be authorized must relate to "civil and criminal cases", that is some judicial proceedings begun in an inferior judicial tribunal. Such is the effect of our decisions. In some of them we have denied appellate jurisdiction to review the judgments or decrees of the circuit courts on appeal from the orders of the Board of Public Works, or other boards, involving simply executive or administrative matters, such as valuation of property for taxation, and the like. Never have we entertained jurisdiction from such decrees or orders of the circuit court unless the same have related to the taxability of the property. The case of *Hart* v. *Baltimore & Ohio R. R. Co.*, 6 W. Va. 336, 362, is not authority for the contrary of the proposition. That was a suit to recover freight charges alleged to have been wrongfully and unlawfully exacted.

It is furthermore argued that the order of the Commission is a law subject to the same constitutional inhibition as an act of the legislature. Citing *Grand Trunk Western Railway Co.* v. *Railroad Commission*, 221 U. S. 400, and *Raymond* v. *Chicago Union Traction Co.*, 207 U. S. 20. Granted; but if so, is such an order reviewable by a court in any other than some judicial proceeding directly attacking its constitutionality? In the absence of constitutional authority we can not say that it is.

But it is said that unless jurisdiction by appeal, given by the 16th section of the statute, to review the order of the Com-

mission, petitioner would thereby be deprived of rights guaranteed by the Constitution, and without judicial process, rendering the whole act void, on the authority of *Chicago, M. & St. P. R. Co.* v. *Minnesota,* 134 U. S. 418. That decision was grounded solely on the construction of its statute by the Minnesota court, by which the federal court felt bound, that the judgment of the Commission was conclusive and final, and the courts without any jurisdiction to vacate, modify or set it aside. Our statute creating the Commission provides for process, and a hearing on petition and answer, and proof, with the assistance of counsel. Quoad that proceeding this is some process. But that is not all. Section 5, already alluded to, contemplates, on good and sufficient grounds, judicial action to suspend, modify or revoke the order of the Commission. How may that be done? There are many precedents, state and federal, for bills in equity to impeach the judgments and orders of such Public Service Commissions, on constitutional and other grounds. Our statutes give no power to the Commission to enforce by its own process its judgments or orders, but by section 5, it may compel obedience to its lawful orders by proceedings of mandamus or injunction, or other proper proceeding in the name of the State in any circuit court having jurisdiction of the parties or of the subject matter, or the Supreme Court of Appeals direct. They are only its *lawful* orders that it may so enforce. Here is opportunity to defend against any and all unlawful orders. But the aggrieved party need not wait to defend, he may take the initiative, and prosecute any proper suit to test the validity of the order of the Commission. In the recent case of *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210, involving the Virginia statute; and *Louisville & N. R. Co.* v. *Garrett,* 231 U. S. 298, 58 L. Ed. 229, cases initiated by the carriers, it was said in the latter case that while a state may permit appeals to its courts from the rate-making orders of its railroad commission, and, upon the review of such orders, it may expressly authorize its judicial tribunal to investigate and decide questions which otherwise would not belong to them, or even to act legislatively, as does the Virginia Constitution and statutes, yet the guarantees of the 14th amend-

ment do not entitle the carrier to the exercise by the courts of such extra-judicial authority. But such action of the State presupposes of course constitutional authority for such action, as was given in the Virginia Constitution and by the statute, but was not given by the Kentucky Constitution and statute. In this State no such constitutional authority is found. But even where such authority is so constitutionally conferred, the action of the court would remain extra-judicial, and legislative or administrative the same as that of the Commission. The making or regulation of rates, says Judge Holmes in the Prentis case, is legislative, not judicial, no matter what may be the dominant character of the body in which this may take place; it is the character of the proceedings and the ultimate end in view that characterizes the act, and that a decision on them can not be res judicata when suit is brought to test their validity, and it does not matter that inquiries have been instituted and hearings had on notice or process. The Prentis and Garrett cases are enlightening on all questions involved here. We must conclude, therefore, that we have no jurisdiction to review as upon appeal the order complained of.

But we at once recognize our duty and obligations to uphold and vivify acts of the legislature when assailed on constitutional or other grounds, if upon well recognized canons, and respect for our own oaths to support the Constitution, we can reasonably do so. Section 16, of the Act of 1913, conferring jurisdiction, in only one place refers to the proceeding in this court as an appeal. The petition and proceedings prescribed are as well, if not better, adapted to a petition or proceeding upon mandamus or prohibition, and as we can not assume, for constitutional reasons, that the legislature intended to confer appellate jurisdiction, we find warrant and authority for construing the statute as intended to confer original jurisdiction by process akin to mandamus or prohibition. The proceeding is summary, the Commission becomes a party by service of a copy of the petition on the secretary, and by service of notice on him, of the time and place fixed for the hearing, and the court or a judge may temporarily suspend the order of the Commission. The Commission is required to

file all original papers, and a statement in writing of its reasons for its action in the premises, and then the court is called upon to decide "the matter in controversy as may seem to be just and right."

It seems to us that the character of the proceedings thus prescribed comport rather with proceedings as upon original process by prohibition or mandamus than upon appellate process. The Commission itself is a party, the main defendant, indeed the only defendant specifically recognized by the statute, and whatever judgment or order this court might make would operate upon its order to suspend or nullify it. The matter in controversy, which we must determine, is whether or not the order of the Commission, within our proper limitations, is right and just. If it is, so far as we have jurisdiction to inquire, we would decline to interfere; if not, we would suspend the order, nullify it, and if need be prohibit its enforcement, leaving the matter open thereafter for further investigation and consideration by the Commission, if required by the nature of the case.

This construction of the statute gives us all the original jurisdiction we ought to possess, and which the legislature must be regarded as having intended to confer. By the broad language used we may assume perhaps that the legislature intended to enlarge somewhat the scope of our original jurisdiction as upon mandamus or prohibition, by bringing under it matters not included within the scope of those writs at common law. We decided in *Boggess* v. *Buxton*, 67 W. Va. 679, that the legislature might do this. But we cannot construe the statute as intended to give us the power and authority to substitute our judgment for that of the Commission, in a matter purely legislative or administrative. Such a construction would practically emasculate the statute and rob it and the Commission of their proper authority and jurisdiction. The salaries which the statute attaches to the office of the Commissioners, and the nature of the subjects to be dealt with by them, all imply that only persons of the requisite qualifications should be appointed, and that after appointment they should by investigation and study become further qualified by learning and experience, indeed should

become experts upon all subjects and business coming within their jurisdiction.

Is it to be presumed then that the legislature intended to invest in this court jurisdiction on review by original or other process to substitute its judgment for that of the Commission? We cannot so hold. The court might, perhaps, differ from the Commission on the same state of facts, acting with its limited knowledge of the subject, as to what would be right and just in a particular case, but would that justify suspension or nullification of the order of the Commission? The statute ought not to be so construed. As was said by the court in *Louisville & N. R. Co.* v. *Garrett, supra,* "the rate-making power necessarily implies a range of legislative discretion; and, so long as the legislative action is within its proper sphere, the courts are not entitled to interpose and upon their own investigation of traffic conditions and transportation problems to substitute their judgment with respect to the reasonableness of rates for that of the legislature or of the railroad commission exercising its delegated power." When we are called upon to review a matter as upon original process we act judicially, and in no sense as a legislative body, or in an administrative capacity.

What then is the limitation and scope of our jurisdiction in the case presented? Apropos to this inquiry, let it be noted, that sections 5, 6 and 7, of our statute, adapted to all kinds of public service corporations, are in substance and effect the same as sections 12, 2 and 3 of the Interstate Commerce Act. Sections 6 and 7, of our act, as do sections 2 and 3, of the Interstate Commerce Act, with reference to railroads, declare the general policy of the State, with respect to the conduct of the business of public service corporations, with respect to rates and charges for the public service rendered, and with respect to unlawful discriminations, as to persons and localities; and section 5 gives the Commission power to investigate, upon its own initiative or upon complaint, and to enforce its orders respecting the same, as therein prescribed.

With respect to the orders of the Interstate Commerce Commission, and judicial authority over the same, it has been well settled by the federal supreme court, that they are final and

not subject to judicial interference, unless "(1) beyond the power which it could constitutionally exercise; or (2) beyond its statutory power; or (3) based upon a mistake of law." But it is there said, that questions of fact may be so involved in the determination of questions of law, that an order regular on its face may be set aside if it appears that, "(4) the rate is so low as to be confiscatory and in violation of the constitutional prohibition against taking property without due process of law; or (5) if the Commission acted so arbitrarily and unjustly as to fix rates contrary to evidence, or without evidence to support it; or (6) if the authority therein involved has been exercised in such an unreasonable manner as to cause it to be within the elementary rule that the substance, and not the shadow, determines the validity of the exercise of the power." *Interstate Commerce Commission* v. *Union P. R. Co.*, 222 U. S. 541, 547, and cases cited.

As already noted, the complaints and the proceedings of the Commission thereon were had pursuant to section 11 of the Act. The general powers of the Commission, prescribed by section 5, are as follows: "Sec. 5. The commission is hereby given the power to investigate all methods and practices of public service corporations, and to require them to conform to the laws of the state. The commission may compel obedience to its lawful orders by proceedings of mandamus or injunction or other proper proceedings in the name of the state in any circuit court having jurisdiction of the parties or of the subject matter, or the supreme court of appeals direct, and such proceedings shall have priority over all pending cases. The commission may change any intrastate rate, charge or toll which is unjust or unreasonable and may prescribe such rate, charge or toll as would be just and reasonable, and change or prohibit any practice, device or method of service in order to prevent undue discrimination or favoritism as between persons, localities or classes of freight; *provided,* that the commission shall not reduce any rate, toll or charge within ten years after the completion of the railroad or plant to be used in the public service below a point which would prevent such public service corporation, person, persons or firm from making a net earning of eight per cent per annum

on the cost of the construction and equipment of said railroad or plant. But in no case shall the rate, toll or charge be more than the service is reasonably worth, considering the cost thereof.''

Sections 6 and 7, of the Act, alleged to have been violated, and redressed pro tanto by the order complained of, are as follows:

"Sec. 6.    No public service corporation subject to the provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive from any person, firm or corporation, a greater or less compensation for any service rendered or to be rendered, than it charges, demands, collects or receives from any other person, firm or corporation for doing a like and contemporaneous service under the same or substantially similar circumstances and conditions.

"Sec. 7.    It shall be unlawful for any public service corporation subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular character of traffic or service, in any respect whatsoever, or to subject any particular person, firm, corporation, company or locality, or any particular character of traffic or service, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.''

There can be no question but that the jurisdiction of the Commission covers gas companies, for section 3 of the act provides, that the jurisdiction of the Commission shall extend to and include "(c) Gas companies, electric lighting companies and municipalities furnishing gas or electricity for lighting, heating or power purposes.''

That the powers thus conferred upon the Commission by the statute are within the bounds of constitutional limitations, as an exercise by the State of its police power, is not controverted.    Among the authorities establishing this proposition may be cited the following cases: *Reagan* v. *Farmers Loan & Trust Co.,* 154 U. S. 362, 394; *Railroad Commission Cases,* 116 U. S. 307; *Tilley* v. *Savannah, Etc. R. Co.,* 5 Fed. 641; *Stone* v. *Yazoo & M. V. R. R. Co.,* 62 Miss. 607, 52 Am. Rep.

193; *Railroad Co.* v. *Transportation Co.,* 25 W. Va. 324; *Minneapolis, etc. R. Co.* v. *Minnesota,* 186 U. S. 257; *Chicago, B. & Q. R. Co.* v. *Jones,* 149 Ill. 361, 24 L. R. A. 141.

There being then no lack of authority in the legislature to enact the statute, and as we find in its terms, ample power and authority in the Commission to prohibit unlawful discriminations in charges by public service corporations, and from enforcing unreasonable rates and charges therefor, we cannot say that the Commission, in the order complained of, has exceeded its constitutional or statutory power, unless the effect of the order in its execution has been or will be to deprive petitioner of some constitutional or statutory right, and therefore in excess of the powers given the Commission.

As already noted, the petitioner relies on right given it by general law, and recognized by the provisions of the statute, to make proper classifications of its patrons, and affirms that its so called term contract patrons constituted a proper basis of classification, and discrimination. That it did so discriminate as charged and found by the Commission is not controverted.

It is patent, therefore, that unless petitioner has found legal justification for such classification and discrimination, the Commission has not acted in excess of its constitutional or statutory authority, and its first, second, third and fourth grounds of error or complaint must be overruled. And we may say *en passant,* and apropos to the suggestion that said order is based on a mistake of law involving questions of fact, that there is not presented any controverted fact justifying a holding that the rate to term contract customers, to which the order under review limits the petitioner, is so low as to be confiscatory, or is the result of arbitrary and unjust action, or that the Commission exercised its authority in such an unreasonable manner that the shadow and not the substance controlled its action, thereby rendering its decision void in law. It is apparent that the real crux in this case is whether the discrimination in favor of term contract patrons is justified as a matter of law.

It is conceded that if a contemporaneous service is rendered under different circumstances and conditions justifying it a

difference in rate may be made; but our statute prohibits a public service corporation from so discriminating for doing a like or contemporaneous service under the same or substantially similar circumstances and conditions, and in any event from making unjust and unreasonable charges for any service.    The Commission found defendant guilty of unlawful discrimination, and also of exorbitant and excessive charges, the latter based upon the alleged unlawful discrimination, and evidence of rates charged by it in other places.    Petitioner relies mainly, if not wholly, on (1) the length of service provided for in the term contracts, and (2) upon the peculiar character of the gas business, requiring of it, it is claimed, at great expense, to anticipate the quantity of gas it will require, and to lease lands and explore the same for gas.

The legal propositions and the authorities cited and relied on to sustain petitioner's contentions are as follows:

First, the general proposition, that reasonable classification as a basis for such discrimination in rates may be made, supported, it is said, by *Western Union Tel. Co.* v. *Call Pub. Co.*, 44 Neb. 326, 62 N. W. 506; *Messenger* v. *Pennsylvania R. Co.*, 37 N. J. L. 531; *Silkman* v. *Board of Water Commissioners*, 152 N. Y. 327; *St. Louis Brew. Ass'n.* v. *St. Louis*, 140 Mo. 419; *Interstate Com. Commission* v. *B. & O. R. R. Co.*, 145 U. S. 263; *Interstate Com. Commission* v. *Delaware, L. & W. R. Co.*, 220 U. S. 235; *Souther* v. *Gloucester*, 187 Mass. 552; *Mercur* v. *Media Elect. L. H. & P. Co.*, 19 Pa. Sup. Ct. 519; *Steinman* v. *Edison Elect. Illum. Co.*, 43 Pa. Sup. Ct. 77; *Graver* v. *Edison Elect. Illum. Co.*, 110 N. Y. Suppl. 603:

Second, that a public service corporation may give its customers reduced rates upon condition that they will agree to patronize it exclusively, during a limited period, providing the same contracts are offered to all patrons, a proposition which is said to be affirmed in *Mogul S. S. Co.* v. *McGregor, Gow & Co.*, L. R. 21 Q. B. D. 544; *Lough* v. *Outerbridge*, 143 N. Y. 271, 38 N. E. 292; *Evershed* v. *London & N. W. Ry. Co.*, L. R. 3 Q. B. D. 135; *Bayles* v. *Kansas Pac. R. Co.*, 13 Colo. 181; *Christie* v. *Mo. Pac. Ry. Co.*, 94 Mo. 453; *Steinman* v. *Edison Elect. Illum. Co., supra; Interstate Com. Commis-*

*sion* v. *B. & O. R. R. Co., supra; Beck* v. *Indianapolis L. & P. Co.,* 36 Ind. App. 600, 76 N. E. 312; *Metropolitan Elect. Supply Co.* v. *Ginder,* 70 L. J. Ch. Div. 862:

Third, that the nature of the gas business furnishes justification for such preferential rates and discrimination in favor of such term contract customers. Citing *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190; *Graver* v. *Edison Elect. Illum. Co., supra; Garrett* v. *South Penn Oil Co.,* 66 W. Va. 587; *Consumers Gas Trust Co.* v. *Littler,* 162 Ind. 320; *Eastern Oil Co.* v. *Coulehan,* 65 W. Va. 531; *State ex rel.* v. *Consumers Gas Trust Co.,* 157 Ind. 345, 351, 61 N. E. 674; *McGraw Oil Co.* v. *Kennedy,* 65 W. Va. 595; *Jennings* v. *Southern Carbon Co.,* 73 W. Va. 215, 80 S. E. 368.

Some of the authorities cited for the first proposition make quantity of service or product consumed justifiable ground for discrimination; others, the difficulty and expense of performing the service, and some of them seem to say that regularity and continuity of consumption may form the proper basis for such classification. And by the authorities cited for the second proposition, exclusive patronage, provided all are given the same opportunity, is made the basis of such discrimination. We have examined most if not all these decisions. Some, if not all of them, are the subject of review, criticism, or approval in 2 Wyman on Public Service Corporations, chapters 38, 39 and 40, covering the subjects, illegal discriminations, justifiable differences, and relative discriminations. For our present purposes we deem it unnecessary to review these cases. Some of them, as counsel for the Public Service Commission have endeavored to show, may be differentiated from the present case. Some of them, particularly the earlier English and American cases, uncontrolled by statute, we think, do support the general proposition relied upon by counsel. Some of these and many other decisions examined, relate, for the most part to carrier rates, limited to terminal points, where there are competing lines, and have generally involved suits by patrons to enjoin enforcement of illegal rates and discriminations, or to compel carriage or service upon terms of the favorite rates, or to recover rates paid in excess thereof, as unreasonable and exorbitant.

The proposition that the nature of the gas business furnishes reasonable justification for the discrimination complained of, has some support, we think, in the decisions cited therefor, and particularly *Graver* v. *Edison Elect. Illum. Co., supra, Steinman* v. *Edison Elect. Illum. Co., supra,* and *Beck* v. *Indianapolis L. & P. Co., supra.* But the dissenting opinion of Mr. Justice Gaynor in the Graver Case, is a most vigorous and forceful assault upon the doctrine announced in the opinion of the New York court. Undoubtedly the natural gas business is sui generis, as is also the production of electric energy for commercial purposes.

But recent and more enlightened public judgment, the trend of modern judicial decisions, and the spirit and terms of recent legislation, including the act of our own legislature now under consideration, are against the theory of discrimination based on any exclusiveness of contracts. Sections 5, 6 and 7, of our act, constitute a practical inhibition on such discriminations where the contemporaneous service is rendered under the same or substantially similar circumstances or conditions. Its reason for obtaining exclusive contracts as a basis for preferential rates, as stated by petitioner, is as follows: "In order to be assured of a market for its said gas for a definite length of time, and thereby be enabled with some certainty to meet its obligations, and to pay the expenses from time to time incurred in obtaining its supply of natural gas, as aforesaid, it adopted and offered to all of its patrons in the said city of Huntington, a reduced rate or price to become effective on or about September 1st, 1911, upon the sole condition that the patrons who obtained the benefit thereof should enter into an agreement in writing with your petitioner to take from your petitioner and pay for all the natural gas which such patron might purchase or use, during the term of five years following the date such agreement became effective, in and about such patron's residence at its (his) then location, or at any other location to which such patron might remove in any city or town, or the suburbs thereof, in which your petitioner should be at such time supplying natural gas to others under contracts for a term of five years at said reduced rate."

We admit the Commission is limited to the powers conferred by the statute. The Commission may not abolish a rate simply because it is discriminatory; it can do this only in case it is found to be unduly so; nor if based on substantial differences in the circumstances and conditions of service. For as was said by the Supreme Court of the United States, in *Interstate Com. Commission* v. *B. & O. R. R. Co., supra:* "It is not all discriminations or preferences that fall within the inhibition of the statute; only such as are unjust or unreasonable. For instance, it would be obviously unjust to charge A a greater sum that B for a single trip from Washington to Pittsburg; but if A agrees not only to go but to return by the same route, it is no injustice to B to permit him to do so for a reduced fare, since the services are not alike, nor the circumstances and conditions substantially similar, as required by section 2 to make an unjust discrimination." And as was said by Mr. Justice Brewer, in *Interstate Com. Commission* v. *Chicago G. W. Ry. Co.,* 209 U. S. 118: "It must be remembered that railroads are the private property of their owners; that while from the public character of the work in which they are engaged the public has the power to prescribe rules for securing faithful and efficient service and equality between shippers and communities, yet in no proper sense is the public a general manager. As said in *Int. Com. Com.* v. *Ala. Mid. R. R. Co.,* 168 U. S. 144, 172, quoting from the opinion of Circuit Judge Jackson, afterwards Mr. Justice Jackson of this court, in *Int. Com. Com.* v. *B. & O. R. R. Co.,* 43 Fed. Rep. 37, 50: 'Subject to the two leading prohibitions that their charges shall not be unjust and unreasonable, and that they shall not unjustly discriminate, so as to give undue preference or advantage, or subject to undue preference or disadvantage persons or traffic similarly circumstanced, the act to regulate commerce leaves common carriers as they were at common law, free to make special contracts looking to the increase of their business, to classify their traffic, to adjust and apportion their rates so as to meet the necessities of commerce, and generally to manage their important interests upon the same principles which are recognized as sound, and adopted in other trades and pursuits.' " And this doctrine

is affirmed in *Cincinnati, N. O. & T. P. Co.* v. *Interstate Com. Commission,* 162 U. S. 194, 197; *Interstate Com. Commission* v. *Cincinnati, N. O. & T. P. R. Co.,* 167 U. S. 479, 493; *Interstate Com. Commission* v. *Alabama M. R. Co.,* 168 U. S. 144, 165; *Southern P. Co.* v. *Interstate Com. Commission,* 200 U. S. 536, 554.

Now we inquire, what is the substantial difference in circumstance or condition in the contemporaneous service rendered or to·be rendered by petitioner to contract and non-contract consumers, justifying it in law in maintaining these differential rates? There is nothing in expense, location, quantity, or the nature of the service required, nor other ground, justifying such discrimination, except the manifest desire to cut off competition and monopolize the business of supplying natural gas to consumers thereof in the City of Huntington, and elsewhere. True the same contracts were offered to all consumers; but where, as in this case, a public service corporation is enjoying a public franchise, and is under a public duty to serve all alike, under substantially the same circumstances and conditions, should we give this statute such construction as would justify such corporation, by coercion, or other inducement not compatible with the general public good, to monopolize the business? Petitioner's defense of its action, we think, constitutes a substantial concession, that monopoly was its object, and, as the Commission found, that these contracts were the methods or devices adopted to accomplish that object. As was said by Mr. Justice Brewer, in *Western Union Tel. Co.* v. *Call Pub. Co.,* 181 U. S. 92, 100, the "principle of equality does forbid any difference in charge which is not based upon difference in service, and even when based upon difference of service, must have some reasonable relation to the amount of difference, and cannot be so great as to produce an unjust discrimination."

There is here no conflict of evidence. The Commission had before it all the facts upon which it based its order, which is limited to the subject of unlawful discrimination. It had before it the fact that the petitioning company's business is wide in scope, not limited to a single town or city, and

evidently concluded from the evidence that there was little merit in its claim that the offending contracts were necessary to preserve its business, or that with or without the competition anticipated it would not be able to obtain a reasonable return upon its investments. There was no attempt upon the part of the petitioner to show that the rate to favorite consumers would not earn for it large profits, or at least reasonable profits. It seems to have declined to go into the question of the reasonableness of its rates, and consequently the Commission made no finding on that question.

Such having been the character of the case presented, it is not for a reviewing court to substitute its judgment for that of the Commission, on questions of expediency, or as to what would be best in the interest of the petitioner, or of the public served. On all such questions we think the legislature intended that the judgment of the Commission should prevail.

But it is contended that by the order of the Commission petitioner has been deprived of rights guaranteed it by the federal Constitution; that the effect of the judgment of the Commission has been to impair the obligation of its contracts, including the decree of compromise referred to. As all such contracts are subject to the superior authority of the State, through its legislature, in the exercise of its police power, and are presumed to have been entered into with knowledge of this superior authority of the State, and whatever effect lawful legislation may have upon such contracts, they are not within the protecting aegis of the federal Constitution, or thereby unlawfully impaired. This rule applies as well to contracts entered into by way of compromise of pending suits, as to any other class of contracts affected. This familiar law requires no citation of authority.

In this case petitioner cannot invoke the due process provision of the federal Constitution, nor that provision entitling it to the equal protection of the law. It has had a full hearing before the Public Service Commission upon notice, and has now had upon its own petition a full judicial hearing in this court upon the record made by it before the Commission, and upon all the legal questions presented. All this satisfies the supremest demands of the federal Constitution. *Louis-*

*ville & Nashville R. Co.* v. *Garrett, supra,* and authorities cited.

For the foregoing reasons we must decline to suspend, vacate or prohibit the execution of the order of the Commission, and are of opinion to dismiss the petition with costs.

*Order of Suspension Refused.*

POFFENBARGER, JUDGE, *(concurring):*

Upon applications under sec. 16 of chap. 9 of the acts of 1913, creating the Public Service Commission and defining its powers, the jurisdiction of this court is original, not appellate, and extends only to the prohibition of unauthorized acts on the part of the Commission and possibly to compulsion of performance of its duties.

That body is not in any sense a court with inherent common law powers. It is an administrative board of statutory origin, possessing quasi judicial and legislative powers. It derives its powers and jurisdiction wholly from the statute. Such power as is not given by the statute it does not have. Nor has it any power in those instances in which any statute or the common law or a constitution expressly or impliedly withholds or denies jurisdiction to it. Manifestly there are many limitations upon its jurisdiction, and that the legislature intended to vest power in this court to enforce them is plain. Instead of giving in terms the common law writ of prohibition to prevent acts in violation of the limitations, the statute says this court may suspend the Commission's orders upon informal applications by petition, which in substance and effect amounts to the same thing. It gives the remedy without its formality.

*Constitutional limitations:* The Commission has no authority to confiscate the property of citizens natural or artificial, or to impair the obligation of an ordinary contract, or so to discriminate against persons as to deny them the equal protection of the law; because the federal and state constitutions withhold power to do any of these things and a good many others, from the legislature itself, the courts, the executive and every other officer and tribunal.

*Statutory limitations:* These are of less dignity but more numerous and equally binding. The Commission cannot

make an order affecting the rate or practice of a public service corporation without giving it notice and an opportunity to be heard, because the legislature has withheld from it the power to do so.  Acts 1913 ch. 9, sec. 2.  It cannot wholly disregard evidence adduced before it on such a hearing, because the statute under which it acts declares it shall regard the evidence.  Action in disregard of the evidence is, therefore, action outside of and beyond the statutory authority of the Commission and void.  It cannot act arbitrarily, because the statute says impliedly, if not expressly, it shall be governed in its action by the fair, honest and candid judgment of its members, and action otherwise would be a similar departure from the statute and an excess or abuse of jurisdiction.  A corporation may have a right under a statute or the common law that is not in any way repealed or limited by the act, creating the Commission and conferring and defining its powers, and which right is not brought within its power and jurisdiction. An attempt to interfere with that would be an act in excess of its powers.  There are no doubt many instances in which the Commission will find it necessary to construe and interpret statutes relating to the rights of corporations and individuals and its own authority and, if, in any such case, it should misconstrue or misinterpret the law, and, so proceeding in violation of law, should invade the legal rights of a citizen or a corporation, the act would be in excess of its jurisdiction.

The precise question presented here is whether the Commission has power to alter a classification of its patrons for the purposes of rates, made by a public service corporation, and that depends upon the intention of the legislature expressed in the act.  Power to change rates, charges and tolls and to change or prohibit any practice, device or method of service in order to prevent undue discrimination is given.  This may seem to include a measure of authority to classify patrons for rate purposes, but it does so, if at all, by implication only, for such authority is not expressly given.  Section 6 impliedly recognizes a right of classification for such purposes in the corporations themselves.  To give it to them and also to the Commission would be contrary and inconsistent.  It would produce conflict.  Hence legislative intent to confer

such authority upon both cannot well be supposed.   Prior to
the passage of the act, such corporations had this power, and
the statute does not in terms take it away from them.   It is
a common law right and the statute is one in derogation of
the common law, such as is generally placed by the courts
under the rule of strict construction.   It seems clearly to fol-
low from this principle, silence of the statute as to power in
the Commission to classify or prevent classification and recog-
nition of the common law right of classification in the cor-
porations, that the legislature did not intend to confer it upon
the Commission; and likewise that it cannot disturb a classifi-
cation made by a corporation upon a difference in service and
under circumstances justifying it under the principles of the
common law.   Hence an attempt to do so would be an act
in excess of the powers of the Commission preventable by pro-
hibition, under a statute expressly conferring jurisdiction by
that remedy.   If the Commission is a purely ministerial body,
the legislature certainly has power to subject its unauthorized
acts to the remedy by prohibition.

Agreeing with Judge MILLER that the classification abolished
by the Commission in this instance is not based upon any
difference in service or circumstances constituting a common
law basis of classification, I think it acted within its powers in
abrogating it.

Within the numerous limitations upon its powers, all of
which are perhaps not here enumerated or indicated, there
lies a wide domain throughout which the Commission has
discretionary power not reviewable by this court upon appli-
cations under sec. 16 of the act, and likely not at all by any
court, and a right of review thereof is not essential to the
validity of the act.   The legislature has the same power to
vest discretionary authority in a Commission of this kind,
within well known limitations, that it has to clothe other
officers and tribunals with it.