# CHARLESTON.

KELLY AXE MANUFACTURING COMPANY *et al. v.* UNITED FUEL
GAS COMPANY.

Submitted November 9, 1920.    Decided November 23, 1920.

1.   PUBLIC SERVICE COMMISSIONS—*May Hear Complaints as to
     Service or Want of Service of Public Service Corporations.*

     The public service commission has jurisdiction by the law
     of its creation, and independently of chapter 71 Acts 1919,
     known as the Steptoe Law, to hear and determine complaints
     lodged with it respecting the service or want of service of a
     public service corporation subject to its jurisdiction. (p.
     370).

2.   INJUNCTION—*Awarded by Supreme Court of United States Held
     Not to Prohibit Public Service Commission from Enforcing
     its Duties to the Public, Not Infringing Federal Constitution.*

     An order of injunction awarded by the Supreme Court of
     the United States in the suit of another state against this
     state, commanding it and its officers, agents and servants and
     the several persons in power under its authority that they de-
     sist and refrain from in any way interfering with the trans-
     portation of natural gas from and out of the state and from
     taking any action or proceeding against any person, company,
     or corporation engaged in the production or transportation of
     natural gas from and out of this state into another state un-
     der authority of said statute, should not be construed as in-
     tending to prohibit said commission from enforcing perform-
     ance by a public service corporation of its duties to the
     public served in the state, not infringing some constitutional
     right protected by the federal constitution. (p. 372).

3.   PUBLIC SERVICE COMMISSIONS—*After Wrongful Dismissal of
     Case by Public Service Commission, the Supreme Court of
     Appeals Will Set Aside its Order and Command it to Hear
     and Finally Determine the Case.*

     When the public service commission dismisses a proceeding
     before it upon grounds not justified, this court will not, in ad-
     vance of the final decision of the case on its merits, undertake
     finally to dispose thereof, but will set aside its order and com-
     mand it to hear and finally determine the case according to
     law. (p. 374).

     (WILLIAMS, PRESIDENT, absent).

Petition by the Kelly Axe Manufacturing Company and
87 W. Va.

others to suspend and set aside a final order entered by the Public Service Commission.

*Order suspended.*

*McClintic, Mathews & Campbell,* for petitioners.

*Geo. W. Johnson* and *R. G. Altizer,* for respondents.

MILLER, JUDGE:

Proceeding pursuant to section 16 of the Public Service Commission Law, chapter 150 of the Code 1918, petitioners seek a suspension and setting aside of the final order entered by the public service commission on October 11, 1920, in case No. 1091, entitled Kelly Axe Manufacturing Company and others, petitioners, against United Fuel Gas Company, begun and then pending before said commission, dismissing said proceeding without prejudice, and with the right reserved to petitioners to file a similar or other complaint at any time after the order of the Supreme Court of the United States therein referred to should have been modified or set aside.

By their said proceedings petitioners sought to compel defendant, substantially as previously proposed to petitioners, but without payment of the increased rates for gas to be supplied, on which said proposition was conditioned, but at the rates previously established, to provide the necessary facilities and do all things necessary to provide petitioners and others similarly situated in the City of Charleston and vicinity with a reasonably adequate and continuous supply of gas for industrial purposes at all times, and to that end; (1) to divert the compressor station at Walgrove Station on Elk River from the use for which it was originally intended to the supplying of gas to Charleston and vicinity, and enlarging said station by three additional units of 480 H. P. each; (2) to install an additional main line at least eight inches in diameter leading from said compressor station to Charleston, for the use of Charleston and vicinity; (3) to construct an additional eight inch line and connect the same with wells in the gas field for the purpose of delivering gas therefrom to said compressor station at Walgrove, for the use aforesaid; and (4) to drill such additional wells as might be necessary to produce, main-

tain and deliver in Charleston a reasonably adequate and continuous supply of gas to the consumers of gas in said city and vicinity. And there was added a general prayer that said defendant, if found necessary for the purposes aforesaid, should be required to make any additional changes and drill such further wells required to furnish and deliver an adequate and continuous supply of gas during the winter months as well as the summer months, excepting only interruptions due to the act of God or causes wholly beyond the control of said company.

Although the proposition in writing of the defendant company, in addition to the foregoing, proposed to change or make use of another eight inch line then being used for delivering gas into a twenty inch line leading to connections with Cincinnati, Ohio, and other places, and used for bringing gas to Walgrove Station, for use in Charleston, petitioners did not ask by this petition such relief.

Upon answer of the defendant, exceptions thereto, and proofs taken before the commission on behalf of all parties, the case was matured for hearing and was argued and submitted to the commission for final decision, with the result already stated.

In its written opinion filed the commission undertook to justify its order dismissing petitioners' proceedings upon the ground, not considered or relied on by the parties, but of which it took cognizance, namely, that it had been enjoined from granting the relief prayed for by the Supreme Court of the United States in the suit of the State of Ohio against the State of West Virginia, involving the validity of chapter 71, Acts 1919, known as the Steptoe Law, it being the opinion of the commission that its jurisdiction in the premises was derived solely from that act.

The order of injunction referred to, addressed to the State of West Virginia, its officers, agents and servants, and all and several the persons in power under its authority, commands and enjoins that they "desist and refrain from in any way interfering with the transportation of natural gas from and out of the State of West Virginia into and for use in the State of Ohio, and from taking any action or proceeding against any person, company or corporation which is engaged in the production or transportation of natural gas from and out of

the State of West Virginia and into the State of Ohio under authority of the said statute."

Section 1 of said act is as follows: "That every person engaged in furnishing, or required by law (whether statutory or common law) to furnish, natural gas for public use, or for the use of the public, or any part of the public, whether for domestic, industrial or other consumption, within this state, shall to the extent of his supply of said gas produced in this state, (whether produced by such person or by any other person), furnish for public use within the territory of this state, and for the use of the public and every part of the public within the territory of this state, in or from which such gas is produced, or through which said gas is transported, or which is served by such person, a supply of natural gas reasonably adequate for the purposes, whether domestic, industrial or otherwise, for which natural gas is consumed or desired to be consumed by the public, or any part of the public, within said territory in this state, and for which said consumer or consumers therein shall apply and be ready and willing to make payment at lawful rates."

And section 3 thereof extends the jurisdiction of the public service commission, conferred by the previous acts, to the enforcement of said act; and section 4 thereof prescribes remedies for the violation of said statute.

In our opinion the commission is in error in referring its jurisdiction solely to the Steptoe Law, and also in its interpretation of the order of injunction in the case referred to. By subsection (c) of section 3 of the Public Service Commission Law, its jurisdiction in specific terms extends to and includes gas companies. By section 4 thereof every such company is required to establish and maintain adequate and suitable facilities and perform such service in respect thereto as shall be reasonable and sufficient. And section 5 gives the commission power to investigate all methods and practices of public service corporations and to require them to conform to its rules, regulations and orders. Section 10 gives the commission power to ascertain the quality and quantity of gas etc., supplied and to examine the methods employed, and to order such improvements as will best promote the public interests and preserve

the public health. Section 22 gives power to the commission to enforce, originate, establish, modify, change, adjust and promulgate tariffs, rates, joint rates, tolls and schedules for all public service corporations supplying gas etc.; and section 23 empowers the commission, whenever any such service is inadequate, to ascertain what service is adequate and reasonable, and to enforce its just and reasonable orders in relation thereto. There would seem to be no lack of authority therefore in the commission to proceed to final judgment on the merits of the case, independently of the provisions of the Steptoe Law.

The statute creating the public service commission and the several amendments thereto make it the duty of the commission, on complaint of anyone injuriously affected, to investigate the practices of public service corporations and to make and enforce its reasonable and lawful orders in relation thereto, and we do not see how the injunction of the federal supreme court can be properly interpreted as enjoining the commission from performing its duties in respect to the law of its creation not in any way infringing constitutional rights and liabilities. The injunction was manifestly predicated on the assumption that the Steptoe Law, in so far as its proposed enforcement would interfere with the transportation of gas into the State of Ohio, amounted to a regulation of commerce between the states, and to that extent rendered void by the federal law. The language of the injunction order shows that its only purpose was to prevent such regulation. But there is nothing in the nature of the proceedings before the commission to show any purpose or intention on the part of the petitioners to interfere directly or indirectly with the business of the defendant, if any, in transporting gas into any other state. The defendant is a West Virginia corporation, deriving its corporate powers from this state, organized as a public service corporation of this state, and made amenable to its laws and to the jurisdiction and authority of the public service commission. Certainly the federal injunction can not be interpreted as denying to the commission its authority to require defendant to perform its duties to the public, though forsooth such service might incidentally divert some of the gas produced here from going into the State of Ohio. But the proceedings before the public service com-

mission were not even directed to any such incidental purpose. So far as the proceedings show the defendant may have ample gas resources to adequately supply the consumers in both states. Defendant is not compellable to engage in interstate commerce; it might withdraw at any time from its interstate business without infringing the rights of anyone; but so long as it chooses to transport gas into other states, the injunction, until dissolved or modified, was intended to and will protect it in that business. If the injunction order should receive the interpretation put upon it by the commission, however, then the public here would be wholly without remedy to enforce a reasonable and proper service, simply because to do so might indirectly affect the amount of gas that sometimes might go in interstate commerce. Such an interpretation of the injunction order would reduce the proposition to an absurdity, not justified by reason or authority.

The remaining question addressing itself to us is what disposition should we make of the proceedings before us? The prayer of the petition presented is that the order of the public service commission complained of be set aside, and, in the alternative, either that the public service commission by writ of mandamus or other appropriate process may be directed and required to proceed to hear, consider and determine the cause; or, if upon appearance of the commission and the filing of the papers in this court we should determine that we can properly finally decide the matters in controversy as may seem to us to be right and proper, then, by like peremptory writ, that we may require of the defendant compliance with such reasonable and lawful order as we may conclude should be entered on the merits of the case. In its order of dismissal the commission said that if free to act in the matter, it would be necessary to consider other questions, such as the cost of improvements necessary to furnish petitioners with an adequate supply of gas and the revenue that would be derived therefrom in order to provide a fair return upon such investment. Such questions invoke a jurisdiction not given to us, in the first instance at least. As we said in *United Fuel Gas Co.* v. *Public Service Commission,* 73 W. Va. 571, 583, in consonance with the holding of the Supreme Court of the United States, in *Interstate Commerce*

*Commission* v. *Union Pacific Railroad Co.*, 222 U. S. 541, 547, and other cases, the orders of the commission are final and not subject to review here, unless "(1) beyond the power which it could constitutionally exercise; or (2) beyond its statutory power; or (3) based upon a mistake of law." Wherefore, our conclusion is that before our jurisdiction can attach, the commission must have acted upon the issues presented to it, and that its action will be final, subject to review here only upon grounds as stated and as held in the case cited.

The limit of our jurisdiction therefore is to set aside the order of the commission dismissing the proceedings and to require it to proceed to hear and determine the same as required by law, and such will be the order of this court.

*Order suspended.*