# CHARLESTON.

United Fuel Gas Company *v.* Public Service Commission.

Submitted January 15, 1924.   Decided January 22, 1924.

1.  Gas—*Order That Gas Utility Furnish Gas Not Suspended Because Not Within Scope of Company's Service.*

    A public natural gas utility company obtains a right of way through a farm for the construction and maintenance of a gas main; lays its pipe line and for a number of years furnishes natural gas therefrom to the owner of the farm for use in his farm dwelling; later the farm owner divides a part of his farm into village lots and disposes of part of his land for a factory site. This' addition is located only about 700 feet from the gas main. A number of private dwellings and other buildings are erected, including an important manufacturing plant. Upon application to the Public Service Commission by the village residents to require the utility company to furnish them with a supply of natural gas, an order of the commission requiring such service will not be suspended because it is not within the professed scope of the service of the company. (p. 417).

2.  Same—*Order to Furnish Gas Not Void Because Part of Cost of Laying Pipe Line to be Borne by Utility Company.*

    Nor is such an order void because part of the cost of laying the line from the company's supply line to the village is to be borne by the company, and part by those petitioning for the service. (p. 418).

3.  Commerce—*Order That Gas Utility Furnish Gas From Interstate Pipe Line Held Not Void.*

    And though such gas will be supplied from a pipe line carrying gas in interstate commerce, the order is not void merely because it requires the company to furnish a small portion of its supply to new consumers. This does not constitute an unlawful interference with the interstate commerce of the company. (p. 418).

Proceedings by the United Fuel Gas Company against the Public Service Commission and others. On petition for an appeal from, and suspension of, an order of respondents.

*Suspension denied.*

*R. G. Altizer* and *Raymond Dodson,* for petitioner.

*J. L. Wolfe,* for respondents, Charles W. Turnbull and others.

MEREDITH, PRESIDENT:

The gas company seeks a suspension of and an appeal from an order entered by the Public Service Commission October 30, 1923, requiring it to construct, operate and maintain a system of pipes for distributing natural gas at North Ravenswood, a suburb of the town of Ravenswood, and to furnish natural gas to the consumers there. The order is conditioned upon the payment by those who petitioned for it of the sum of 1200.00, toward the cost of laying the pipe lines, which the record shows will be approximately $2500.00.

The company for years has been furnishing natural gas to the residents of Ravenswood. It operates there under a franchise. North Ravenswood is an addition laid out early in 1921. It is about eight-tenths of a mile from the corporate line of Ravenswood. It has twenty-eight houses occupied, two stores, a church, several houses in course of construction, and a porcelain plant employing about fifty people. The evidence shows that other dwellings will be built if natural gas is supplied. All the buildings are equipped to use natural gas for fuel; nearly all of them are new. The evidence shows that the porcelain company desires to use gas in the manufacture of its ware, though it is not a party to this proceeding. It is now using coal, but unless it can secure a supply of gas it must exclude from its manufacture the finer grades of ware. If it can secure a gas supply, it will use about 3,000,000 cubic feet per month. The report of the commission's engineer shows that the present residents will use sufficient gas at present rates to provide a revenue of from $750 to $850 per year. If the porcelain company is supplied, the revenue from that source will be upward of $5550.00 annually; so that the total gross revenue will be about $6400.00 per year, under present conditions. There will, without doubt, be increased demands for gas in North Ravenswood, as the addition is now rapidly building up and will tend to do so more and more if natural gas and other facilities are supplied the in-

habitants. As the company maintains a branch office at Ravenswood, operated by one man who sets and reads the gas meters and distributes the monthly statements, the collection being made through one of the Ravenswood banks, doubtless this new service would entail no additional expense, after it is once installed. The company does not contend that the revenue will not be sufficient to warrant its share of the expense; and the fact that part of the cost of laying the line is to be paid by these private consumers does not affect the validity of the order, as we held in *Baltimore & Ohio R. R. Co.* v. *Public Service Commission,* 90 W. Va. 1, 110 S. E. 475.

For ten years the company has been furnishing gas to Warren Wood for use in his dwelling in North Ravenswood. It renders this service through a pipe line laid by him, about 3100 feet long, connecting its main to his dwelling. The village of North Ravenswood was laid out on the Warren Wood farm. About seven hundred feet north of the line of this addition the company's eighteen inch pipe line from its gas fields crosses this farm and connects with the Ohio Fuel Supply Company's line. The latter company purchases gas from the appellant and pipes it across the Ohio River into the state of Ohio, where it is sold.

The company relies upon two grounds for the suspension prayed for:

1. That the service required is outside the scope of the professed service of the company.

2. That the order constitutes an illegal interference with interstate commerce.

Referring to the first ground, company's counsel urges that the company never contracted to furnish natural gas to the residents of North Ravenswood; that therefore an enforced service there is outside the scope of its service and is consequently illegal, because it imposes upon the company an involuntary servitude. Is it outside the scope of its service? If the scope of its service were confined to the town of Ravenswood, obviously the question must be answered in the affirmative. But it is not so confined. The record does not affirmatively show all of the many villages, towns and cities in this state supplied by the company with natural gas, but

the commission knew that the company is supplying natural gas to thousands of people located in a vast area in this state, and in various localities. The record shows that it is furnishing gas to one private consumer in North Ravenswood. The company is engaged in the public service and whether it acquired its right of way through the Wood farm by private purchase or by condemnation, its eighteen inch main is being devoted to public service. As was stated by Judge MILLER in *Carnegie Natural Gas Co. v. Swiger,* 72 W .Va. 557, 79 S. E. 3, 46 L. R. A. (N. S.) 1073, ''Pipe line companies organized for transporting natural gas must serve the people with gas, under reasonable and proper regulations, along the entire line traversed, and for reasonable rates fixed by themselves, or by statute, or by contracts or ordinances of municipalities.'' Whether it condemned the right of way or acquired it by private contract makes no difference here. The fact remains that it may have done so. Being a public service company, it can not, like a private person, have complete liberty in choosing its customers. Under the circumstances shown, we agree with the finding of the commission that North Ravenswood is ''within the territory served by the defendant and within the scope of the present service, operation and profession of the company.''

The second objection is based upon the language of the Supreme Court of the United States in *Pennsylvania v. West Virginia,* 262 U. S. 553, 43 Sup. Ct. Rep. 658, holding what is popularly known as the Steptoe Act unconstitutional because that act authorized an unlawful interference with interstate commerce. That statute was held void because it gave an unlawful preference to consumers of gas in West Virginia over gas consumers in other states, and permitted this state by fines and penalties to enforce such preference.

The order here complained of was not entered under authority of the Steptoe Act, but under the general law governing the commission, ch. 15-0, Barnes' Code, 1923. If the company's contention were sound, then it could not be compelled to furnish gas to a single new customer in West Virginia, even where it is operating under a municipal franchise, because this might require it to divert a small portion

of its gas in its mains which would otherwise go to a consumer in another state.  We do not think the Supreme Court of the United States in its opinion in the case cited meant to go that far.  If it did, then our Public Service Commission might as well cease attempting to regulate the public service natural gas companies in this state that are in any wise engaged in carrying natural gas beyond our borders.  If they could refuse to furnish gas to new customers in this state who are within the proper scope of their service, they might with just as much reason refuse to serve their old ones; they could then devote all their gas to interstate commerce, without being obliged to serve a single citizen of West Virginia.  While enjoying the full benefit of our laws, being invested with the power of eminent domain, they would be exempt from the burdens.  Professing to be public servants in this state and thereby being enabled to enter our courts and deprive our people of their lands, ostensibly for a public use, they can not immediately thereafter, on the ground that they need all their supply of gas for their customers beyond the state, deny to our citizens their just portion so long as the supply lasts.  Our citizens do not want it all; they are willing to share with the citizens of other states, but equity and fair dealing requires that our people shall have their just share so long as there is gas to be had.  We do not believe that the enforcement of the order will illegally interfere with the interstate commerce of the company.

This same contention was raised in the case of *Kelly Axe Manufacturing Co.* v. *United Fuel Gas Co.,* 87 W. Va. 368, 105 S. E. 152.  When that decision was rendered, the injunction issued by the Supreme Court of the United States in the case of *Pennsylvania* v. *West Virginia,* above referred to, prohibiting the enforcement of the Steptoe Act, was in full force, yet we held that, properly interpreted, it did not prohibit the commission from requiring a public service company to perform its duties under a valid law of this state.

The prayer of the petition for an appeal from and a suspension of the order will therefore be denied.

*Suspension denied.*