# CHARLESTON.

UNITED FUEL GAS COMPANY *v*. PUBLIC SERVICE COMMISSION

(No. 5905)

Submitted February 15, 1927.    Decided March 1, 1927.

1.  PUBLIC SERVICE COMMISSION—*Public Service Commission Has Jurisdiction, When Right and Justice Require It, and It Would be Unreasonable and Unjust to do Otherwise, to Deny Application of Patrons of One Utility to Compel Another to Duplicate Service and to Also Serve Applicants.*

    The Public Service Commission has jurisdiction, when right and justice require it, and it would be unreasonable and unjust to do otherwise, to deny the application of patrons of one utility to compel another to duplicate the service and to also serve the applicants.    (p. 309).

2.  SAME—*When Patron of One Natural Gas Utility is Being Satisfactorily and Amply Served by It, Would be Unreasonable, Unjust and Arbitrary Exercise of Power of Public Service Commission to Compel Another Utility to Duplicate Service at Great Expense Not Called for by Facts and Circumstances of Service.*

    When a patron of one natural gas utility is being satisfactorily and amply served by it, it would be an unreasonable, unjust and arbitrary exercise of the power of the Public Service Commission to compel another utility to duplicate the service at great expense not called for by the facts and circumstances of the service.    (p. 313).

3.  SAME—*When Order of Public Service Commission Requiring Such Duplication of Service is Based on Mistake of Law and Amounts to Unreasonable, Unjust and Arbitrary Exercise of Its Powers, This Court Has Jurisdiction by Statute and Will, in Interest of Right and Justice, Set Aside and Annul Such Order, and Dismiss Petitions of Applicants for Such Duplication.*

    And when an order of the Public Service Commission requiring such duplication of service is based on a mistake of law and amounts to an unreasonable, unjust and arbitrary exercise of its powers, this court has jurisdiction by statute and will, in the interest of right and justice, set aside and annul such order, and dismiss the petitions of the applicants for such duplication.    (p. 313).

Petition by United Fuel Gas Company against the Public Service Commission.

*Reversed and annulled; petition dismissed.*

*F. M. Livezey,* for Public Service Commission; *Philip P. Gibson,* for the Huntington Brick & Tile Company; *W. C. W. Renshaw,* for Huntington Development & Gas Company.

*Paul W. Scott* and *Geo. S. Wallace,* Amicus Curiae.

MILLER, JUDGE:

The relief sought by the petitioner, the United Fuel Gas Company, is the indefinite suspension of the order of the Public Service Commission promulgated December 4, 1926, upon the petition of the Huntington Brick and Tile Company against the United Fuel Gas Company, and the dismissal of the former's petition. In the proceeding in which that order was made, the Huntington Development and Gas Company intervened to protect its interests therein as a public service corporation.

The order was made by a divided commission, two of three concurring therein, one being against it. It required, for the reasons set forth in the written report to this court, that the United Fuel Gas Company should furnish the complainant, upon its compliance with the authorized rules and regulations of the utility, with a supply of natural gas at its plant at or near the city of Huntington.

And it further ordered that upon the installation of such service by the United Fuel Gas Company, the intervenor, the Huntington Development and Gas Company, if it so desired, to discontinue its service to the complainant, the last being a polite but unwelcome invitation to an ignominious death, for without patrons its death would be assured.

Historically, the United Fuel Gas Company was first upon the ground, before the advent of the Public Service Commission, with exclusive contracts with the industrial and private consumers to insure it against ruinous competition in the service of natural gas. The Huntington Development and Gas Company was later, and after the Public Service Com-

mission was created by law, organized by some of the industrial and private consumers and others who were ready and willing to breach their contracts with the United Fuel Gas Company, to enter the same field as a competitor, particularly for the supply of industrial gas, and was given a franchise for that purpose by the city of Huntington, and entered the field as a competitor, receiving the patronage of practically all consumers of industrial gas, at a reduced schedule of rates from those fixed by the United Fuel Gas Company, and as the undisputed evidence shows, forcing the latter out of the market for such industrial gas and much of the domestic gas, and at great expense to seek a market in Kentucky and Ohio cities.  The Huntington Brick and Tile Company was and continues to be served by this competitive company, and it has made no complaint of that service.  The supply of gas, it is admitted, is ample and persistent; and the only complaint lodged with the Public Service Commission was that the rates fixed by the commission for the United Fuel Gas Company were considerable lower than those fixed as reasonable and just by the commission for the Huntington Development and Gas Company, and that it desired the advantage of the lower rates of the former company.

The defense to the application interposed by the United Fuel Gas Company was that it did not have the gas with which to serve the applicant as desired; that it would cost it to make the connections desired with its mains at least $750.00, and $550,000.00 to equip itself to supply gas to complainant, and about $1,160,000.00 to supply gas to all the consumers of the Huntington Development and Gas Company; and that then it would be able to furnish no better supply of gas than was being obtained from the other company.

The commission was no doubt greatly influenced in reaching its conclusion by the facts elicited from officers of the United Fuel Gas Company respecting the present relationship of both utilities to the Columbia Gas and Electric Company, a holding company, now the owner of 51% of the capital stock of the United Fuel Gas Company, and 49% of the

stock of the Ohio Fuel Supply Company, and of a controlling interest in the Huntington Development and Gas Company: wherefore, it was considered that they might with right and justice relieve the one utility and cast its burdens on the other without substantial injury to the rights and interests of either company, which we think can hardly be justified upon any principles applicable to public utilities subject to its control and supervision. There is no community of interest, so far as the record shows, between the utilities involved here. The Columbia Gas and Electric Company was not before the commission, and the commission's order could not directly affect the rights of that company. And what has become of the rights of the minority stockholders of the utilities involved here? The directors are bound to administer the properties for the benefit of all stockholders, minority as well as majority.

But the principal ground for the relief granted seems to have been that the commission was without jurisdiction to deny the relief prayed against the United Fuel Gas Company, being one of the two utilities operating under franchises granted by the municipality; that being a public service corporation it is bound to supply all applicants regardless of all the circumstances and conditions relied on as a defense against such enforced service. These matters of defense relied on were presented by demurrer and answer of the United Fuel Gas Company, the petition of the intervenor, and the demurrer and answer of the complainant thereto. There are no material facts in dispute. The facts established are:

First: That complainant is now being served with a satisfactory supply of gas by the intervening petitioner, and that the United Fuel Gas Company would not be able to render any better service.

Second: That petitioner made complaint, not because of any failure of service by the intervening company, but for the sole purpose of getting the service at a lower rate, to which the United Fuel Gas Company had been limited by the commission.

Third: That the applicant is not personally in a position to serve the complainant without the expenditure of large sums of money for increased supply and facilities, and that other industrial and domestic consumers, as evidenced by at least one application already filed, and other portended by the several groups of counsel who have intervened with briefs as amici curiae, will be demanding like service, and for no better reason, and with like result to the intervenor. The question of the commission's jurisdiction to deny the relief sought by complainant will be first disposed of. Sections 4, 5, 10 and 11, of chapter 15-0 of the Code, give the commission almost unlimited power and authority to control the facilities, charges and services of all public service corporations and to hear the complaints of those entitled to the services. The only limitation upon this authority is that the requirements shall not be contrary to law, and that they shall be ''just and fair,'' ''just and reasonable,' 'and ''just and proper;'' and the jurisdiction of this court to review the orders of the commission, as provided by section 16 of said chapter, and within the proper limitations which we have prescribed, is to ''decide the matter in controversy as may seem to be just and right.'' We will not undertake to interpose our judgment against the finding of facts by the commission, nor to judge as to what is the better policy, if left to its discretion and judgment.

It is very manifest from the state and federal statutes on the subject, that the principal purposes of all commission regulation of public service corporations is to require uniformity in rates, prevent unjust discrimination in rules and practices by them, and unnecessary duplications of plants and facilities, and unjust burdens upon the public resulting therefrom, or ruinous competition between persons and corporations employed in the public service; and certainly we can find no justification in statute law or judicial decisions, for such commissions, by means of regulatory orders, to sacrifice one utility in behalf of another. Commissions came into existence, not to destroy the law, but to fulfill. In the present case both gas companies were born of state and municipal action. Why should one of them be destroyed by

the commission? Its action is not one of foetal strangulation, but of death of the utility at the hands of its progenitor, by starvation, after reaching its majority. If, as is admitted, the only purpose of the complainant was to get cheaper gas, why was the application not made to the commission to compel the intervenor to reduce its rates? It entered the field as a competitor of the United Fuel Gas Company, and at a greatly reduced rate, and took away a large portion of its patrons. Why not reduce its rates if too high, and not burden the other utility with a service neither desired nor justly imposed upon it? The intervenor is fully equipped to render the service, is in the field with all necessary connections, and is ready and willing to serve its customers. Why duplicate the service to the ruination and destruction of the intervenor and its property? The commission can be conceded no such arbitrary authority. The courts and public utility commissions generally, construing statutes, deny such power. Supporting this proposition, we begin with the decision of the Supreme Court of the United States in *People of the State of New York ex rel. Woodhaven Gaslight Company* v. *Public Service Commission of New York,* 46 Sup. Court Rep. 83, holding that, the court will not substitute its judgment for that of the public service commission as to the necessity for extensions, but will consider advantages to the public from extension, its cost and effect on the company's income as a whole, and reverse decisions of the commission as repugnant to the due process clause, if it appears that power to regulate was so used as to pass beyond the exercise of reasonable judgment and amount to infringement of rights of ownership, affirming the principle declared in *New York & Queens Gas Company* v. *McCall,* 245 U. S. 345. In the *Woodhaven Company case,* the company's contention was not upheld, but in that case it did not appear that any other utility was authorized to furnish gas there, and it was to be assumed that these communities were dependent on the defendant company for service. The case here is very different. Lack of such dependency fully appears. See, also, *People ex rel. Woodhaven Gas Co.* v. *Deehan,*

153 N. Y. 528. The same principle was applied by us in *United Fuel Gas Company* v. *Public Service Commission*, 95 W. Va. 415. In *Public Service Commission* v. *Loveland,* (Colo.), P. U. R. 1924-E. 516, the public service company protested against the granting of a permit to the municipality for the erection· by it of a municipal electric light plant. It was said, denying the permit: ''The question before the commission is one not of local concern, but is a matter rather of general state policy, based on the proposition of the state in its powers of regulation in the interest of the public as a whole, which so regulates as that the duplication of similar utilities shall not· be permitted, as being against public interest.'' The principal reason being as declared by the Public Service Commission of Maryland, that, ''duplication of generating plants and distribution system increases the· capital investment upon which the rates must yield a return, decreases the area into which service may be extended, reduces the number of consumers who must pay the charges, and hence increases the pro rata share that each user must pay.'' *Re Mayor and Council of Hagerstown,* P. U. R. 1924-B. · 211. In that case the commission denied the municipality permission to build, maintain and operate for other than municipal purposes, an electric light plant in the city served by a private electric utility, and situated in a territory served by interconnected private utilities. · In *Fleetwood & Kutztown Electric Light, Heat & Power Company* v. *Topton Electric Light & Power Company,* (Pa. Pub. Ser. Com.), P. U. R. 1924-A. 353, it was decided that: ''An electric utility should not be permitted to invade the territory occupied by another utility when this would be detrimental to the public interest, especially when the equities of the situation are with the existing utility.'' And so it was held also in *Re Windber Telephone Company,* (Pa. Pub. Ser. Com.), P. U. R. 1922-D. 46. In *Re Roscoe Electric Electric Company,* P. U. R. 1925-A. 176, the Wisconsin Railroad Commission held that a second electric utility should not be permitted to render service to persons already adequately supplied; and to the same effect it was decided by the same commission, *In Re Boyceville Tele-*

*phone Company,* P. U. R. 1925-A. 398.    *In Re Wells R. Streeper,* P. U. R. 1924-B. 392, the Utah Public Utilities Commission decided that the best interests of the general public are served by the stabilization of public service agencies operating in a given field rather than permitting them to be subjected to ruinous hazards of competition.    In *Ogle* v. *Home Telephone Company,* P. U. R. 1924-D. 308, the Illinois Commerce Commission held that the telephone subscribers in a territory served and developed by the utility with which they were connected should not be transferred to the exchange of another company which would be compelled to make an additional investment and extension which would not pay a fair return, especially when this would result in an unjustifiable rate to subscribers.    In *United States* v. *New River Company,* 265 U. S. 533, the Interstate Commerce Commission ordered that certain coal companies whose mines were located on two railroads and designated as joint mines, should in the distribution of coal cars be limited to their pro rata share according to the gross daily rating of their mines in like manner as single mines, according to rule 4, regardless of the fact that they had the natural advantage of being accessible to two railroads.    The District Court enjoined the enforcement of this order.    The Supreme Court reversed this decree, holding that the order of the commission was not so arbitrary and unreasonable as to transcend its power, nor operate to deprive the owners of the joint mines of the advantage of their location on two roads, or of their property without due process of law.    The principle which controlled in that case, we conceive, is in some measure at least applicable here.

The disposition of patrons of public utilities to reach out for duplicate service by others is opposed to the general principles controlling such public service.    With reference to this subject, an able writer says:

''The Commissions are constantly denying applications for extensions into occupied territory where the established company is furnishing adequate service at reasonable rates.    It has even been held that a Commission cannot establish general rules and regulations governing the extension of water

mains in new localities, since the necessity of the extension must be determined from the facts of each case." 1 Spurr's Guiding Principles of Public Service Regulation, p. 118.

In disposing of the case before us we appreciate the powers and authority conferred upon the Public Service Commission, and the limitations upon our own, recognized in former decisions, and not to be departed from here. We do not undertake to invade the right of the commission to investigate the facts nor to determine questions of expediency, nor what is best for the public interest, nor questions which should be regarded as final when determined by it. We have so held in a number of cases. *United Fuel Gas Company* v. *Pub. Ser. Com.*, 73 W. Va. 751; *Balto. & Ohio R. R. Co.* v. *Pub. Ser. Com.*, 99 W. Va. 670, 672; and cases cited; *City of Huntington* v. *Pub. Ser. Com.*, 101 W. Va. 378. But in our opinion the conclusion reached by the commission in this case is based first on a mistake of law, that it was powerless to deny the relief sought by complainant, for as we have pointed out it has ample authority conferred by statute to limit such relief to what is "just and reasonable," "just and fair," "just and proper," "just and right," and "not contrary to law." And as declared here in the cases cited, we may review the judgment of the commission when "based on a mistake of law," or when it acted arbitrarily and unjust without evidence to support it, or when its authority has been exercised in such an unreasonable manner as to cause it to be within the elementary rule that the substance and not the shadow has determined the validity of the exercise of the power, the rule declared also in *Interstate Commerce Commission* v. *Union Pacific Railroad Company*, 222 U. S. 541, 547, and followed by us in the cases already cited. And applying these rules we are clearly of the opinion that the order of the Public Service Commission complained of should be set aside, reversed and annulled, and the petition wholly dismissed; and we will finally dispose of the case in this way.

*Reversed and annulled; petition dismissed.*

HATCHER, PRESIDENT: *(Dissenting.)*

The majority opinion is based on the well known principle that duplication of utility service should not be required when an established service is satisfactory.  It is true that the quantity of gas supplied the Brick Company by the Huntington Company ·is ample; but is quantity the only thing to be considered in such service?  Is service to be held *satisfactory* no matter what the price charged therefor?  It seems clear that the price as well as the supply should be considered, and no service held satisfactory when the rate for that service is higher than the rate of competitive service in the same neighborhood.

The United Fuel Company admits having some surplus gas, but says that the surplus alone will not supply the demands of the Brick Company.  This claim is no answer to the application of the Brick Company.  "A natural gas company authorized by the legislature to exercise the right of eminent domain, and licensed by a city to lay pipe-lines through its streets and alleys for the distribution of gas to consumers, is not relieved from furnishing gas to an applicant in front of whose premises the pipes were laid, because it has an insufficient supply of gas properly to supply its present customers." *State ex rel. Wood* v. *Consumers Gas Trust Co.,* 157 Ind. Repts. 345.

It is also admitted by the United Fuel Company that one of its mains passes through the property of the Brick Company, and that it will cost only about $750.00 to make adequate connection from that main to the plant of the Brick Company.  The order of the Commission which we now have under consideration is as follows:

> "it appearing that the cost of installing the service applied for will not exceed· seven hundred dollars and that the defendant is able, from its present supply of gas, to furnish said service, the Commission is of opinion the complainant is entitled to the relief for which it prays.  It is, therefore, considered and ordered by the Commission that the defendant, United Fuel Gas Company, be,

> and it hereby is, required to furnish the complain-
> ant, upon compliance by said complainant with the
> authorized rules and regulations of the said gas
> company, with a supply of natural gas at its plant
> at or near the City of Huntington.''

The foregoing order simply requires the United Fuel Com-
pany to furnish the Brick Company ''with a supply of natu-
ral gas.'' It does not specify an adequate supply, or any
definite amount of gas. The order states that the present
supply of the United Fuel Company is ample for this ser-
vice: consequently, there is no ground for the contention that
the effect of the order is to require the United Fuel Com-
pany to increase its supply and furnish full service ''regard-
less of expense'' in case its present supply should prove in-
adequate. Since the order does not require an increase, a
contemplation of that question is not proper on this appeal.
We have no right to consider the expense of such an increase
until it has been passed by the Commission.

It is undisputed that the increased rate charged by the
Huntington Company will materially reduce the earnings of
the Brick Company, ''if not wipe them out''. It is also
undisputed that the revenue paid the Huntington Company
by the Brick Company amounts to $50,000.00 or more a year,
and that in case the Huntington Company loses that volume
of business, it cannot ''make any appropriate return on the
investment''. The record does not disclose why the Hunting-
ton Company is not able to furnish gas at as low a rate as the
United Fuel Company. Whatever the cause of the higher
rate, it is not attributed in any way to the Brick Company.
The majority opinion is concerned, and properly so, to pre-
vent the ''strangulation'' of the Huntington Company, but
it gives little consideration to the plight of the Brick Com-
pany. It does ask why the Brick Company did not apply to
the Commission to compel the Huntington Company to re-
duce its rates. This question points to no solution of this
problem. The application herein was made on June 24, 1925.
The increased rate had been granted the Huntington Com-
pany by an order of the Commission entered on May 18, 1925.

If we presume, as we should, that the increased rate was not authorized by the Commission without due investigation and consideration, the futility of seeking a reduction so soon after the increase was granted is apparent.

In cases like this, the interests of the patron should be weighed as carefully as those of the utility. If the patron perish, upon what will the utility survive? Why require the Brick Company to operate without profit in order that the Huntington Company may prosper? In the final analysis, a utility is simply a business risk. The State does not insure its success. The opinion of Commissioner Coffman rightly holds: ''The State offers no guaranty to a public service corporation that its business will always be profitable. The Legislature has not created a dam against the tide of ordinary economic law.'' The State fosters utilities for the mutual benefit of the public, the consumers and the utilities. Whenever a utility cannot meet the rate of a competitor, how is the patron or the public benefitted by further municipal protection of such utility? The Brick Company is not an eleemosynary corporation. Perceiving no reason for requiring it to act as one in its dealings with the Huntington Company, I respectfully dissent from the majority opinion.

WOODS, JUDGE: *(Dissenting).* I concur in the dissenting opinion of Judge HATCHER.