# CHARLESTON.

HUNTINGTON BRICK AND TILE CO., *et al. v.* PUBLIC SERVICE
COMMISSION, *et al.*

(No. 6554)

Submitted September 4, 1929. Decided September 17, 1929.
(Rehearing denied September 30, 1929)

*Paul W. Scott* and *George S. Wallace,* for appellants.

*B. J. Pettigrew* and *Harold A. Ritz,* for respondent United
Fuel Gas Co.

*F. M. Livezey,* for respondent Public Service Commission.

HATCHER, JUDGE:

This is an appeal from an order of the Public Service Com-
mission entered June 3, 1929, refusing to require United
Fuel Gas Company, a public utility, to furnish gas to Hunt-
ington Brick and Tile Company and H. R. Wyllie China
Company. The application of the former was filed with the
Commission on August 23, 1927, and that of the latter Janu-

ary 19, 1928. The reasons given by the Commission for its ruling are that the controlling facts of this case are not substantially different from the facts established in the case of *Huntington Brick and Tile Company* v. *United Fuel Gas Company,* No. 1614, decided by this Court March 1, 1927, and reported in 103 W. Va. 306, and that the decision in that case is *res judicata* as to this one. The grounds for denying the Brick and Tile company relief in the former case were that the granting of its demands would (1) require the expenditure of an unwarranted sum of money by United Fuel Gas Company, and (2) open the door to competition which would be ruinous to Huntington Development and Gas Company, the utility supplying the petitioner and a rival of United Fuel Gas Company. The petitioners herein contend that material facts are proven in this case which throw a light on the situation, entirely different from that which led the Court in the former case. It is therefore necessary to compare the facts appearing in the two cases.

The opinion in Case No. 1614 refers to Huntington Brick and Tile Company as "complainant," to United Fuel Gas Company as "applicant," to Huntington Development and Gas Company as "intervening petitioner," and states that the facts established were:

"First: That complainant is now being served with a satisfactory supply of gas by the intervening petitioner, and that the United Fuel Gas Company would not be able to render any better service.

Second: That petitioner made complaint, not because of any failure of service by the intervening company, but for the sole purpose of getting the service at a lower rate, to which the United Fuel Gas Company had been limited by the commission.

Third: That the applicant is not personally in a position to serve the complainant without the expenditure of large sums of money for increased supply and facilities, and that other industrial and domestic consumers, as evidenced by at least one application already filed, and others portended by the several groups of counsel who have intervened

with briefs as *amici curiae,* will be demanding like service, and for no better reason, and with like result to the intervenor.''

Huntington Development and Gas Company intervened as a defendant in this case. It furnishes gas to both the petitioners at twenty-six cents net, per thousand cubic feet for the first 150,000 cubic feet, and twenty-five cents per thousand cubic feet for additional gas. The rate of United Fuel Gas Company referred to in the second paragraph above, is five cents lower per thousand cubic feet (plus discount for prompt payment) than the rate of the Huntington Development and Gas Company. The facts presented in this case as to adequate service·and as to the purpose of the applicants are the same as in the former case.

1. ·The defendants took no evidence in· this case tending to show that the same conditions exist now as are stated in the third paragraph of the opinion in the former case. They merely filed here the record in Case No. 1614. The evidence in that case was taken in July of 1925; in this case it was taken in May and June of 1928. No applications from other patrons of the intervening defendant for service from the United Fuel Gas Company now portend. On the contrary, four large consumers of industrial gas, whose plants are connected with the pipe lines of both defendants, indicate satisfaction with the higher rate by taking gas exclusively from Huntington Development and Gas Company or from both defendants without discrimination.

The daily requirements of both defendants do not exceed 1,000,000 cubic feet of gas. It now appears that United Fuel Gas Company has lost two customers, Owens Bottle Company in 1925 and International Nickel Company in 1927, who jointly had taken from it approximately that quantity. No proof is offered to show that the amount of gas available to United Fuel Gas Company is less now than when it supplied the two companies above mentioned. If there has been no diminution of its supply, and no increase in industrial or domestic consumers, then the gas formerly furnished the two companies should be available now for the use of the defendants. If so, there would be no necessity of United Fuel

Gas Company expending money for more gas. That during the first five months of 1928 United Fuel Gas Company had gas largely in excess of the requirements of its domestic and industrial customers is demonstrated by the fact that in several exchanges of gas with its co-defendant during that period, it furnished Huntington Development and Gas Company with 299,720,000 cubic feet of gas more than it received in return. During that period both petitioners would not have consumed over half that quantity. The pipe lines of United Fuel Gas Company are within a few feet of the plants of the applicants. The Wyllie Company offers to make connections with that line at its own expense. The cost of connections in the case of the other applicant will be only about $750.00. Consequently, the proof in this case as to the amount which United Fuel Gas Company must expend in order to supply the applicants with gas is radically different from that in the former case. But whether United Fuel Gas Company, as a separate corporate entity, has excess gas is not a controlling question, in view of the facts narrated in the next paragraph.

2. In Case No. 1614 it was proven that Columbia Gas & Electric Company held "a controlling interest" in Huntington Development and Gas Company, and owned fifty-one per cent of the capital stock of United Fuel Gas Company. But the remaining forty-nine per cent in the latter company was held by Ohio Fuel Supply Company, in which the Columbia Company had no interest. The United Fuel Gas Company and the Huntington Development and Gas Company were under separate management. The former had furnished a small quantity of gas to the latter upon a few occasions of emergency (8,512,000 cubic feet in six years), but there is no evidence that the latter had ever supplied the former with any gas. Upon that proof the Court held: "There is no community of interest, so far as the record shows between the utilities involved here." In this case a different state of facts appears as to the intercorporate relations. Columbia Gas and Electric Corporation of Delaware, a holding corporation, now owns fifty-one per cent of the stock of United Fuel Gas Company, the remaining forty-nine per cent still

being held by Ohio Fuel Supply Company. But over ninety-nine and one-half per cent of the stock of Ohio Fuel Supply Company is also owned by the Columbia Corporation. Approximately ninety-nine and one-half per cent of the stock of Huntington Development and Gas Company is owned by Huntington Gas Company, and the entire stock of Huntington Gas Company is owned by the Columbia Corporation. H. A. Wallace is now the general manager of both defendants. During 1927 there was a continuous interchange of gas in large quantities between the two, United Fuel Gas Company supplying its co-defendant with 425,405,000 cubic feet, and receiving from it 590,193,000 cubic feet. It therefore appears now that the two utilities are subject to one ownership (for all practical purposes), that they are under one management, and that community of interest is fully established. In the former case the Court was properly concerned about ruinous competition between the utilities and the danger of sacrificing one for the other. When we look through the veil of corporate entities, as we may do by reason of the evidence presented here, the danger of ruinous competition and economic waste is not a factor in this case. There can be no real competition between corporations which are owned by the same party and are under the same management. Instead of competition between the utilities involved, this case shows a harmonious combination between them.

We therefore find that conditions affecting the defendants have changed so materially since the former decision that the doctrine of *res judicata* does not apply. "The estoppel of a judgment extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-examination of the same questions between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants." 34 C. J., 905, sec. 1313; Freeman on Judgments, 5th Ed., sec. 712.

The application of the Wyllie Company to United Fuel Gas Company for gas was made in 1925. The defendants contend that the petition of the Wyllie Company should be dismissed because it made no application to United Fuel Gas

Company for gas after the decision of the former case between the Brick and Tile Company and United Fuel Gas Company. The fact that United Fuel Gas Company resisted the application of the Wyllie Company before the Public Service Commission and has also resisted its petition in this Court, sufficiently indicates a refusal to furnish it gas.

In a former decision of this Court, it was held that when the Public Service Commission has dismissed a proceeding before it upon grounds not justified, and has not determined the case on its merits, this Court will set aside the order of the Commission and remand the case for determination according to law. See *Kelly Axe Company* v. *United Fuel Gas Company*, 87 W. Va. 368. Following that decision, the order of the Commission herein is set aside, and it is directed to determine the case on its merits.

*Reversed.*