PITT & GREENE ELECTRIC MEMBERSHIP CORPORATION v. CAROLINA POWER AND LIGHT COMPANY.

(Filed 7 July, 1961.)

**1. Electricity § 2—**

A power company and an electric membership corporation are free to compete in rural areas unless restricted by some valid stipulation in a contract between them.

**2. Contracts § 12—**

The interpretation placed upon a contract by the parties themselves prior to controversy will be given consideration by the courts in construing the agreement.

**3. Electricity § 2— Contract held not to preclude power company from constructing line across line of membership corporation to serve customers more than 300 feet from line of membership corporation.**

The contract in suit between a power company and an electric membership corporation provided in the article relating to service facilities under (a) that neither party should furnish service to anyone who was then a customer of the other or who could be served by the other by extension of existing facilities not exceeding 300 feet, and under (b) provided that neither should duplicate the other's facilities except insofar as duplication should be necessary to transmit energy between unconnected points on its line, but that no service should be rendered from such lines in competition with the other. Neither party had objected that the distribution lines of the one crossed the distribution lines of the other at points other than the point in question, and had done so for a number of years prior to the controversy. *Held:* The subsections of the service facilities article of the contract must be construed *in pari materia*, and be interpreted with regard to the interpretation placed upon the agreement by the parties themselves prior to the controversy, and the agreement does not preclude the power company from constructing an extension to its distribution line to cross at approximately a right angle the distribution line of the membership corporation in order to serve customers and prospective customers more than 300 feet from the distribution lines of the membership corporation, although the power company could not serve any customers within 300 feet of the established line of the membership corporation.

**4. Same— Public policy in regard to duplication of power lines is a legislative and not a judicial question.**

An electric membership corporation is not required to obtain a certificate of convenience and necessity from the Utilities Commission before construction of facilities for serving its members, G.S. 62-101, and may compete with a power company for customers in rural areas subject only to the contractual restrictions between them, and therefore, in the absence of any order of the Utilities Commission, whether it is against public policy to permit a power company to construct a line across that of a membership corporation is a question for legislative action, and cases decided upon controversy between power companies subject to regulations by a public service commission are inapposite.

APPEAL by plaintiff from *Mintz, J.*, January 9 Term, 1961, of GREENE.

Plaintiff, an electric membership corporation, seeks to enjoin defendant, a public utility corporation, "from constructing any extension of its electric facilities, and from furnishing electric service to any person, — alongside of or near to North Carolina Highway #91, between the present terminus of defendant's facilities located approximately 1500 feet south of plaintiff's substation adjacent to said highway north of the Town of Snow Hill, and plaintiff's distribution line where same crosses said highway near the Walter Heath residence, approximately 3,200 feet north from said substation."

North Carolina Electric Membership Corporation, of which plaintiff is a member, was granted leave to appear as *amicus curiae*.

The court based its judgment on stipulated facts.

Plaintiff, since its incorporation in 1937 under G.S. 117-6 *et seq.*, has furnished electric service to its members in certain rural sections of Pitt, *Greene,* Lenoir, Wayne and Wilson Counties.

Prior to 1937 and until its merger with defendant, effective February 29, 1952, the Tide Water Power Company (Tide Water), a public utility corporation, had supplied electricity to the Town of Snow Hill and various sections of Greene and other counties in eastern North Carolina; and, since said merger, defendant has continuously supplied electricity in the sections formerly served by Tide Water.

Plaintiff and defendant entered into a contract under date of January 5, 1956, which provides for the sale by defendant to plaintiff of all power and energy required for plaintiff's electric system in excess of that purchased by plaintiff from the United States of America (generated in the Government's plant at John H. Kerr Reservoir), at rates set forth on an attached schedule relating to the sale of electricity "to a nonprofit rural electric membership corporation for sale to ultimate consumers." Article 8 of this contract provides:

"(a) Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall distribute or furnish electric energy to anyone who, at the time of the proposed service, is receiving electric service from the other, or whose premises are capable of being served by the existing facilities of the other without extension of its distribution system other than by the construction of lines not exceeding three hundred feet in length.

"(b) Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall duplicate the other's facilities, except insofar as such duplication shall be necessary in order to transmit electric energy between unconnected

points on its lines, but no service shall be rendered from such interconnecting facilities in competition with the other party."

A prior contract of July 1, 1951, superseded by said contract of January 5, 1956, contained provisions identical to those set forth in said Article 8. The record is silent as to whether said contract of January 5, 1956, was submitted to and approved by the North Carolina Utilities Commission. The prior contract of July 1, 1951, entered into by plaintiff and Tide Water, was drafted in accordance with a form contract approved by the Utilities Commission.

Three maps (Exhibits D, E and F) of an area of Greene County approximately two miles north of the Town of Snow Hill are attached to and made a part of the "Stipulations of Fact." North Carolina Highway #91 extends north-south through the area shown on these maps. These maps show: (1) Distribution lines constructed by Tide Water prior to 1937 and in continuous use therafter by Tide Water and by defendant. (2) Distribution lines constructed by plaintiff prior to 1952. (3) A substation, a 33 KV transmission line and distribution lines constructed by plaintiff in 1955. (4) A distribution line to the school site, referred to below, constructed after this action was commenced under a no-prejudice stipulation. (5) The location of the line defendant proposes to construct, and which plaintiff seeks to enjoin, along Highway #91.

In general, defendant's present lines, all of which were constructed prior to 1937, are west of Highway #91. The only material exception is a line along Highway #91, the northern terminus of which is approximately 1500 feet south of where plaintiff constructed its substation in 1955.

In general, the lines constructed by plaintiff prior to 1952 are east of Highway #91. The lines of plaintiff and defendant then and now surround the area shown on said maps.

The factual situation established by the stipulations cannot be stated in detail except by repeated references to said maps. The facts stated below, based on an analysis of the stipulations and maps, are sufficient to indicate the question for decision on this appeal.

The substation constructed by plaintiff in 1955 is on the west side of and adjacent to Highway #91. The 33 KV transmission line constructed by plaintiff in 1955 extends east (crossing Highway #91) from the substation; and a distribution line constructed by plaintiff in 1955 extends east (crossing Highway #91) from the substation. These lines cross property on which the Greene County Board of Education is constructing a Central High School. The school property

is on the east side of Highway #91. At the time this action was commenced, the Board of Education had not applied either to plaintiff or to defendant for electricity for the school. Subsequent to the commencement of this action, the Board of Education applied to plaintiff for permanent electric service. At the request of the contractor, "and without prejudice to the parties in this action," plaintiff constructed a distribution line to the school site to provide power during the construction period.

The terminus of defendant's existing distribution line on Highway #91 is 428 feet south of the southern boundary of the school property.

The terminus of one of plaintiff's distribution lines is on Highway #91, 3200 feet north of the point where the lines emanating from plaintiff's substation cross Highway #91 and approximately 1829 feet north of the northern boundary of the school property.

Presently, neither plaintiff nor defendant has any distribution line *along* Highway #91 between the points described in the two preceding paragraphs.

John S. Harper, Jr., owns property on both sides of Highway #91. The portion on the west side has been surveyed, subdivided and staked off into building lots. The portion on the east side adjoins the northern boundary of the school property. Harper plans to subdivide this portion of his property. Harper has requested defendant to construct a distribution line and provide electric service to his property.

Defendant proposes to construct (extend) a distribution line from a point on Highway #91 428 feet south of the southern boundary of the school property and running north, generally with Highway #91, a distance of 3,854 feet, the northern terminus to be 817 feet south from the terminus of plaintiff's said distribution line on Highway #91. Defendant has obtained all necessary easements for such construction. If constructed by defendant, this (extended) distribution line will cross, near Highway #91, plaintiff's lines emanating and extending east from the substation and crossing Highway #91.

Plaintiff alleges the construction by defendant of said proposed distribution line would constitute a violation of the provisions of Article 8 of their contract of January 5, 1956, and should be enjoined.

Reference will be made in the opinion to other stipulated facts.

The judgment entered by Judge Mintz (1) denies the injunctive relief sought by plaintiff, (2) dissolves the temporary restraining order theretofore issued, and (3) taxes plaintiff with the costs. Plaintiff excepted to the judgment and to each of the court's conclusions of law set forth therein and appealed.

*Lewis & Rouse and J. A. Jones for plaintiff, appellant.*

*I. Joseph Horton, A. Y. Arledge and W. Reid Thompson for defendant, appellee.*

*William T. Crisp for North Carolina Electric Membership Corporation, amicus curiae.*

BOBBITT, J. Statutory provisions relating to electric membership corporations and to public utility corporations are set forth and discussed in *Power Co. v. Membership Corp.,* 253 N.C. 596, 117 S.E. 2d 812, and in *Membership Corp. v. Light Co.,* 253 N.C. 610, 117 S.E. 2d 764.

In *Light Co. v. Electric Membership Corp.,* 211 N.C. 717, 192 S.E. 105, decided in 1937, this Court held that an electric membership corporation and a public utility corporation were free to compete in rural areas. Unless restricted by the provisions of Article 8 of their contract of January 5, 1956, plaintiff and defendant may continue to do so.

Article 8, entitled "Service Facilities," consists of the two paragraphs designated (a) and (b). The restrictions imposed thereby apply equally to plaintiff and defendant. Judge Mintz, in Conclusion of Law No. 3, construed Article 8 as follows:

> "Clause (a) prohibits either party unless ordered to do so by a lawful order issued by a properly constituted authority from supplying electric service to anyone who, at the time of the proposed service, is receiving electric service from the other or whose premises are capable of being served by the existing facilities of the other without extension of its distribution system other than by the construction of lines not exceeding three hundred feet in length.
>
> "Clause (b) must be construed *in pari materia* with clause (a), and clause (b) prohibits either party, unless ordered to do so by a properly constituted authority, from constructing duplicating facilities within 300 feet of the lines of the other, except insofar as such construction within such 300-foot zone shall be necessary to transmit electric energy between unconnected points on its lines, and except for crossing of the lines of the other; but no service shall be rendered from such interconnecting facilities or crossing lines in competition with the other party, that is, no service shall be furnished from such interconnecting facilities or crossing lines to any applicant whose premises are capable of being served by the existing facilities of the other without ex-

tension of its distribution system other than by the construction of lines not exceeding three hundred feet in length.

"There is no prohibition in the contract against either party furnishing electricity to any location which is more than 300 feet from the existing lines of the other, nor is there any prohibition in the contract against either party constructing any facilities at places more than 300 feet from the existing facilities of the other."

Whether the construction by defendant of its proposed line would violate the provisions of Article 8 is, as stated in plaintiff's brief, "the heart of the lawsuit."

Defendant is subject to the supervision and jurisdiction of the Utilities Commission. The clause, "unless ordered so to do by a lawful order issued by a properly constituted authority," indicates the parties were advertent to statutory provisions vesting in the Utilities Commission all power necessary *to require and compel* defendant to provide and furnish reasonable electric service to the citizens of this State. G.S. 62-30.

Defendant, if its proposed extension is constructed, will have no right to distribute electric energy therefrom to anyone now served by plaintiff or whose premises can be served by plaintiff from its existing facilities or extensions thereof not exceeding 300 feet. Plaintiff does not allege defendant proposes to do so. Defendant disavows intent to do so.

Paragraph (a) defines the specific area in which the right to compete is restricted. The right of each party to continue to compete in areas more than 300 feet from the existing facilities of the other is clearly implied.

Plaintiff contends paragraph (b) is a separate and independent contractual provision; that, when so construed, the construction of defendant's proposed extension would duplicate plaintiff's facilities within the meaning of paragraph (b); and that such duplication is not necessary in order to transmit electric energy between unconnected points on defendant's lines.

. In determining the meaning of Article 8, consideration must be given the interpretation heretofore placed thereon by the parties. *Power Co. v. Membership Corp., supra.*

It was stipulated: "The lines of plaintiff and defendant cross at various points, and the plaintiff and the defendant have always understood and agreed that the crossing of the lines of the one by the other does not *per se* constitute a violation of the terms of the contract between the parties."

Moreover, the stipulated facts disclose: (1) Lines constructed by plaintiff prior to 1952 then and now cross at two points lines con-

structed by Tide Water prior to 1937 and in use continuously thereafter by Tide Water and by defendant. (2) In 1955, when plaintiff constructed its substation, it then constructed, in addition to the lines extending east (crossing Highway #91) therefrom, a distribution line extending southwest from the substation. This distribution line then and now crosses a distribution line constructed by Tide Water prior to 1937 and in use continuously thereafter by Tide Water and by defendant; and, at the nearest point, this distribution line was and is only 856 feet from *another line* of defendant constructed by Tide Water prior to 1937.

It is noted: Defendant's proposed extension will not parallel but will cross (approximately at right angles) the lines (extending east from the substation) constructed by plaintiff in 1955. It will not be within 300 feet of plaintiff's existing facilities except in the immediate area where it crosses plaintiff's said lines. While it would involve greater distance and cost, defendant (as shown by the maps) could reach the particular area in which the Harper property is located without crossing any line of plaintiff. The line defendant proposes to construct is an extension of a line constructed by Tide Water prior to 1937 and in use continuously thereafter by Tide Water and by defendant.

Ordinarily, plaintiff concedes, either party may construct a line over or under a previously constructed line of the other. Plaintiff contends defendant cannot do so in order to compete with plaintiff in an area where adequate service can be provided by plaintiff, at less construction cost, *by an extension* of plaintiff's previously constructed facilities. To do so, plaintiff contends, would constitute a duplication of its facilities within the meaning of paragraph (b). However, in our opinion, the reference in paragraph (b) to "the other's facilities" refers to the other's *existing* facilities; and paragraph (b) prohibits service from "interconnecting facilities in competiton with" the existing facilities of the other party. We find nothing in paragraph (b) that suggests either party cannot construct a line over or under a line of the other for the purpose of distributing electric energy in an (undefined) area more than 300 feet from such other party's existing facilities because such other party *may, by extension of its existing facilities,* provide adequate service therein. Obviously, the only reason either party would construct such a line would be to supply electric energy to customers, present or prospective.

It seems clear that all of Article 8 relates to the area defined in paragraph (a), an area not exceeding 300 feet from existing lines of plaintiff or defendant; that paragraph (a) prohibits *competitive service* in this area; and that paragraph (b) prohibits the construction of

facilities in this area except when necessary to provide service beyond its limits. The construction by plaintiff in 1955 of a distribution line crossing a distribution line previously constructed by defendant indicates plaintiff as well as defendant has so interpreted and understood the provisions of Article 8.

In our opinion, paragraphs (a) and (b), both under the caption, "Service Facilities," are *in pari materia* and must be construed together; and, when so construed, the restriction imposed upon a party who constructs an interconnecting facility, that is, one that crosses over or under a previously constructed line of the other, is that it may not distribute electric energy therefrom to anyone served by the other or whose premises can be served by the other from its existing facilities or extensions thereof not exceeding 300 feet.

Plaintiff contends this construction of Article 8 contravenes sound public policy. Suffice to say, public policy is for legislative determination. Decision on this appeal depends solely on whether defendant's proposed extension would violate the provisions of Article 8.

Plaintiff does not allege or contend defendant's proposed line, in crossing over or under plaintiff's lines, will be so constructed as to create a threat to workmen servicing plaintiff's lines or otherwise create a dangerous condition. *Intermountain R. E. Ass'n v. Colorado Central P. Co.* (Colo.), 307 P. 2d 1101, cited by plaintiff, is not in point. There the court restrained a "rural electric association" from erecting poles so close to those of the power company that the crossbars overlapped, thereby energizing the lines of the power company (then under construction) and creating a threat to the safety of workmen on the power company's line.

Plaintiff cites *Kentucky Utilities Co. v. Public Service Com'n* (Ky.), 252 S.W. 2d 885. There the East Kentucky Rural Electric Cooperative Corporation applied to the Public Service Commission of Kentucky, under Section 278.020 of Kentucky Revised Statutes, for a certificate of convenience and necessity authorizing construction of a steam generating plant and transmission lines for the purpose of supplying electric energy to the distribution systems of the local rural electric cooperative associations throughout the state. The application was opposed by the public utility corporations then supplying the electric energy to the cooperatives. The discussion in the court's opinion with reference to the duplication of facilities must be considered with reference to this factual situation. The significant fact is that the court was reviewing an order of the Public Service Commission. Under Kentucky statutes, the applicant and the local rural electric cooperative associations were subject to the general supervision and jurisdiction of

the Public Service Commission. K.R.S., Section 279.210, Sections 278.010-278.450, inclusive, and Section 278.990.

*United Fuel & Gas Co. v. Public Serv. Commission* (W. Va.), 138 S.E. 388, 52 A.L.R. 1104, cited by plaintiff, is not in point. There, the controversy was between two public utility corporations, both subject to the supervision and jurisdiction of the Public Service Commission. The court reversed the Commission's order on the ground it was unreasonable, unjust and arbitrary. The Commission's order *compelled* one public utility corporation, at great expense, to provide service to a customer then satisfactorily and amply served by the other public utility corporation.

This Court has held that an electric membership corporation is not required (by G.S. 62-101), "before beginning the construction or operation of its facilities for serving its members by furnishing them electricity for lights and power, to obtain from the Utilities Commissioner of North Carolina a certificate that public convenience and necessity requires or will require the construction and operation of said facilities." *Light Co. v. Electric Membership Corp., supra; Membership Corp. v. Light Co., supra,* and cases cited; G.S. 117-27. Decisions involving a controversy before a public service commission or utilities commission, between an electric membership corporation and a public utility corporation, when both are subject to the supervision and jurisdiction of such commission, are not in point.

Whether plaintiff as well as defendant *should* be subject to the supervision and jurisdiction of the Utilities Commission is for legislative consideration and determination. Now, as heretofore, plaintiff and defendant are competitors in rural areas; and their rights to compete are limited only by the provisions of Article 8 of their contract of January 5, 1956. Except as provided therein, a prospective user of electric energy is at liberty to determine whether he will become a member and customer of plaintiff or a customer of defendant.

In connection with its contention that the interpretation we place upon Article 8 will result in wasteful construction of duplicating facilities, plaintiff suggests: "Each party will extend its  lines unnecessarily so that its lines will be in place for future consumer demands, which may or may not materialize." Plaintiff contends this is what defendant, by its proposed extension, is attempting to do. It seems appropriate to call attention to this stipulated fact: Plaintiff has never had any member and services no one with electricity along the lines constructed by it in this area in 1955 except the school contractor.

Whether the Utilities Commission has authority, in a properly constituted proceeding, to prohibit the construction by defendant of a proposed extension, if it should determine on competent evidence that

such construction would be an unnecessary and wasteful investment of defendant's funds, is not presented for consideration on this appeal.

As to furnishing electric energy to the school, this explanation seems appropriate: The area defendant will serve from its proposed extension is more than 300 feet from any of plaintiff's existing facilities. The maps show the distance from defendant's proposed extension to the nearest portion of the school building to be 460 feet plus the width of Highway #91. Before the line now furnishing power to the school contractor was constructed, the distance from plaintiff's existing lines to the nearest portion of the school building, according to the maps, was substantially more than 460 feet. Hence, the school site was in free territory; and, since the School Board has applied to plaintiff for permanent service, defendant concedes plaintiff's right to provide such service.

Having reached the conclusion the construction of defendant's proposed extension would not constitute a violation of the provisions of Article 8, the judgment of the court below is affirmed.

Affirmed.